**Reversed and Remanded and Opinion filed March 5, 2013.**



In The

# Fourteenth Court of Appeals

## NO. 14-11-00456-CR

**ROMAN RAMIREZ-MEMIJE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 174th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1256139**

## O P I N I O N

A jury convicted appellant Roman Ramirez-Memije of fraudulent possession of 10 or more but less than 50 items of identifying information, a second-degree felony. *See* TEX. PENAL CODE ANN. § 32.51(b), (c)(3) (West Supp. 2012). Appellant challenges his conviction in three issues, arguing that the trial court erred by (1) refusing to include in the jury charge appellant's requested instruction on voluntary conduct under Section 6.01 of the Penal Code; (2) failing to include

in the jury charge an instruction concerning presumptions under Section 2.05 of the Penal Code; and (3) admitting testimony that appellant was from Mexico and working illegally in the United States.

We sustain appellant's first issue, reverse the trial court's judgment, and remand for further proceedings.

## I.    BACKGROUND

The State presented evidence that appellant was a "middleman" in a credit card skimming operation. Appellant retrieved a credit card skimmer[1] from Dante Salazar and delivered it to Antonio Cercen, a waiter at Alicia's Mexican Restaurant. After Cercen used the skimmer to collect credit card numbers and other identifying information from Alicia's patrons, appellant would retrieve the skimmer from Cercen and deliver it to Salazar.

Special Agent Charles Hutchins with the United States Secret Service learned from a fraud investigator at Chase Bank Card Services that several people who had dined at Alicia's reported unauthorized credit card purchases. The investigation revealed that Cercen had been the waiter for all of the customers. Hutchins contacted Cercen, and Cercen agreed to help Hutchins arrest appellant in a sting operation. After Cercen received the skimmer from appellant, Cercen gave the skimmer to the Secret Service. Special Agent Jesse Kirkegaard used Exeba software to "dump" data from the skimmer onto a computer, which revealed that the skimmer contained identifying information for multiple people.

Secret Service agents observed Cercen meet with appellant and hand him the skimmer; they arrested appellant within a few minutes. Appellant and the State

---

[1] According to witness testimony, a credit card skimmer stores information obtained from the magnetic strip on a credit card.

dispute exactly what appellant said about the skimming operation after his arrest.[2] However, appellant agreed to help the Secret Service set up delivery of the skimmer to Salazar.[3]

Appellant testified that he had never received any benefits from participating in an illegal skimming scheme; he did not know what the device was; and it looked like a walkie-talkie or recorder. He did not look into it and see what was in it. He did not own any software that could look into the device. Special Agent Kirkegaard testified that the skimmer "probably looks like an old fashioned beeper." Special Agent Hutchins testified that a person could "scroll through and see what was on" the skimmer, but he never saw appellant look at the information on the skimmer, and Hutchins had no information that appellant knew what was on the skimmer.

Appellant was indicted for the fraudulent possession of identifying information. *See* TEX. PENAL CODE ANN. § 32.51(b). The jury charge stated that "a person commits the offense of fraudulent possession of identifying information if the person, with intent to harm or defraud another, possesses an item of identifying information of another person without the other person's consent." The charge defined "identifying information," "consent," and "harm." The charge also included (1) statutory language concerning intent and knowledge found in Section 6.03 of the Penal Code;[4] (2) an application paragraph that tracked the language of

---

[2] Special Agent Michael Johnson testified that he was proficient in Spanish, and he had a brief conversation with appellant after the arrest. Johnson testified that appellant said he would receive cash and electronics in return for delivering the skimmer to Salazar. Appellant testified that Johnson misunderstood the translation, and appellant was talking about purchasing a video game system from Salazar. We consider the entire record and state of the evidence when conducting a harm analysis. *See Abdnor v. State*, 871 S.W.2d 726, 733 (Tex. Crim. App. 1994).

[3] In a phone conversation with Salazar, appellant said, "[Cercen] completed all fifty." Appellant testified that the Secret Service agents told him to say this.

[4] *See* TEX. PENAL CODE ANN. § 6.03(a)–(b) (West 2011).

Section 32.51(b); and (3) a statutory presumption found in Section 32.51(b-1) of the Penal Code: "You are instructed that the defendant is presumed to have the intent to harm or defraud another if the defendant possesses the identifying information of three or more other persons."[5]  The charge did not include any language from Section 2.05(a)(2) of the Penal Code.  *See* TEX. PENAL CODE ANN. § 2.05(a)(2) (West 2011).[6]

Appellant objected to the charge and requested, among other things, that the charge include paragraphs appearing in Section 6.01 of the Penal Code as follows:

> (a)  A person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession.
>
> (b)  Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control.

TEX. PENAL CODE ANN. § 6.01(a)–(b) (West 2011).  The trial court refused to include this instruction in the charge.  Appellant did not object to the failure of the charge to include an instruction about presumptions under Section 2.05(a)(2) of the

---

[5]The charge also included standard instructions concerning the presumption of innocence, communication with the jury, and outside evidence, among other things.

[6] When a presumption is submitted to the jury, the trial court must instruct the jury as follows:

> (A)  that the facts giving rise to the presumption must be proven beyond a reasonable doubt;
>
> (B)  that if such facts are proven beyond a reasonable doubt the jury may find that the element of the offense sought to be presumed exists;
>
> (C)  that even though the jury may find the existence of such element, the state must prove beyond a reasonable doubt each of the other elements of the offense charged; and
>
> (D)  if the jury has a reasonable doubt as to the existence of a fact or facts giving rise to the presumption, the presumption fails and the jury shall not consider the presumption for any purpose.

TEX. PENAL CODE ANN. § 2.05(a)(2).

4

Penal Code. Appellant was convicted and sentenced to three years' confinement.

## II. ANALYSIS

In his first issue, appellant contends the trial court erred by refusing to include in the jury charge appellant's requested instruction on voluntary conduct pursuant to Section 6.01 of the Penal Code. Appellant argues that the evidence raised the issue of voluntary conduct because it indicated that he did not know the skimmer contained identifying information, and Section 6.01(b) makes possession a voluntary act only if the defendant "knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." TEX. PENAL CODE ANN. § 6.01(b).

The State responds that appellant was not entitled to the instruction because "appellant proffered no evidence that he did not voluntarily possess[] the skimmer," and "the evidence did not raise a voluntary conduct issue, but instead a mens rea defense." The State implicitly contends that "the thing possessed" in Section 6.01(b) is the skimmer—rather than identifying information.[7] The State also argues that appellant did not raise any evidence concerning an involuntary "bodily movement."

We conclude that "the thing possessed" in Section 6.01(b) means the identifying information in this case—not the skimmer. Further, appellant was entitled to his requested instruction because issues concerning voluntary conduct and culpable mental state are distinct, and the evidence raised the issue of whether his possession was voluntary. We also find that appellant suffered some harm.

---

[7] The parties did not brief a statutory interpretation issue, but oral argument revealed that the parties dispute the meaning of "the thing possessed" in Section 6.01(b). The State contends that proving possession of the skimmer was adequate to establish possession of the identifying information.

## A. Meaning of "The Thing Possessed"

When interpreting statutes, we look first to the literal text for meaning. *Mahaffey v. State*, 364 S.W.3d 908, 913 (Tex. Crim. App. 2012). We should construe words in accordance with their common usage unless a word has acquired a technical or particular meaning. *See* TEX. GOV'T CODE ANN. § 311.011 (West 2005); *State v. Rhine*, 297 S.W.3d 301, 312 (Tex. Crim. App. 2009).[8] We are limited to reviewing the literal text unless the plain language is ambiguous or would lead to absurd consequences. *See Mahaffey*, 364 S.W.3d at 913.[9]

The literal text of the statute indicates that "the thing possessed" refers to the particular item of contraband prohibited by statute—here, "identifying information." The State presents no authority for interpreting "thing" to mean anything other than the item of contraband prohibited by a penal statute. The statute is unambiguous and does not lead to absurd results. Appellant was indicted for the offense of possessing "identifying information," and the jury was so charged. Both Kirkegaard and Hutchins testified that it is not illegal to possess the skimmer. Given that there could be no offense for possessing the skimmer per se, "the thing possessed" must refer to the object proscribed by statute—identifying information.

## B. The Requirement of a "Voluntary Act" of Possession is Distinct from the Mens Rea "Intent to Harm or Defraud"

"It is settled law that criminal liability must be supported by proof of both a

---

[8] *See also* TEX. PENAL CODE ANN. § 1.05(b) (West 2011) (Section 311.011 of the Code Construction Act applies to the Penal Code).

[9] A statute is ambiguous when it "may be understood by reasonably well-informed persons in two or more different senses; conversely, a statute is unambiguous where it reasonably permits no more than one understanding." *Mahaffey*, 364 S.W.3d at 913. A statute leads to an absurd consequence when the Legislature could not have possibly intended the result. *See id.* at 914.

criminal act and a culpable mental state." *Alford v. State*, 866 S.W.2d 619, 622 (Tex. Crim. App. 1993). This concept is codified in Sections 6.01 and 6.02 of the Penal Code: (1) "requirement of voluntary act or omission" and (2) "requirement of culpability." *See id.*; *see also* TEX. PENAL CODE ANN. §§ 6.01, 6.02 (West 2011). More than thirty years ago, however, Judge Clinton observed that "the unique character of 'possessory' offenses has always plagued and confounded the bench and bar, for it defies analysis by the general methodology of viewing the major components of offenses as 'conduct' distinct from 'intent.'" *Gorman v. State*, 634 S.W.2d 681, 685 (Tex. Crim. App. 1982) (Clinton, J., concurring).

"Possession" is defined as "actual care, custody, control, or management." TEX. PENAL CODE ANN. § 1.07(a)(39) (West Supp. 2012). But Section 6.01(b) describes possession as a voluntary act "if the possessor ***knowingly*** obtains or receives the thing possessed or is ***aware*** of his control of the thing for a sufficient time to permit him to terminate his control." *Id.* § 6.01(b) (emphasis added). "Knowingly" is a culpable mental state. *See id.* §§ 6.02(a), 6.03(b). Thus, the "voluntary act" of possession seemingly involves an overlap between actus reus and mens rea. But a line must be drawn between the two concepts because a defendant is not entitled to an instruction on "voluntary act" if his defense is merely that he did not act with the requisite culpable mental state. *See Adanandus v. State*, 866 S.W.2d 210, 230 (Tex. Crim. App. 1993). A defendant is not entitled to a jury instruction on a defensive theory that "merely negates an element in the State's case." *Walters v. State*, 247 S.W.3d 204, 209 (Tex. Crim. App. 2007).

The Court of Criminal Appeals has held that the requirement of a voluntary act under Section 6.01(a) is not subsumed by the mens rea requirement of an offense. *See Brown v. State*, 955 S.W.2d 276, 280 (Tex. Crim. App. 1997). "[T]he issue of the voluntariness of one's conduct . . . is separate from the issue of one's

7

mental state." *Adanandus*, 866 S.W.2d at 230. Thus, if the evidence at trial raises the issue of whether the defendant voluntarily engaged in conduct, the jury must be instructed on the issue. *See Brown*, 955 S.W.2d at 280.[10] This principle has been applied to possessory offenses and Section 6.01(b). *See Hernandez v. State*, 867 S.W.2d 900, 906 (Tex. App.—Texarkana 1993, no pet.) ("where a fact issue as to a defendant's possession of contraband had been raised at trial, the jury must be instructed on what constitutes possession under the law"; noting that the charge included a Section 6.01(b) instruction).[11] Further, a Section 6.01(b) instruction does not itself incorporate the necessary mens rea element in the jury charge for a case involving the possession of contraband. *Compare Doyle v. State*, 631 S.W.2d 732, 739 (Tex. Crim. App. 1980) (error to omit mens rea element from the jury charge), *with id.* at 750 (McCormick, J., dissenting) (arguing there was no error because the charge included a Section 6.01(b) instruction).

Accordingly, we conclude that appellant is entitled to an instruction under Section 6.01 if the evidence at trial raised the issue of whether appellant knowingly obtained or received the identifying information or was aware of his control of the identifying information for a sufficient time to permit him to terminate his control.

---

[10] The State must disprove this defensive theory beyond a reasonable doubt. *See Alford*, 866 S.W.2d at 624 n.8.

[11] *See also Moss v. State*, 850 S.W.2d 788, 795 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd) (no error to deny appellant's jury charge applying the definition of "voluntary act" when there was no evidence that raised the issue of voluntariness in this possession of contraband case; noting that the charge included a Section 6.01(b) instruction in the abstract section); *Manuel v. State*, 782 S.W.2d 335, 337 (Tex. App.—Houston [1st Dist.] 1989, pet. ref'd) (no error to deny the defendant's particular voluntariness instruction in application paragraph of charge when the defendant's defense was that there was no evidence he "possessed the cocaine 'knowing it was cocaine' . . . [b]ecause the abstract definition portion of the charge properly defined 'possession' and 'voluntary possession'" as defined in Section 6.01(b)); *Gonzales v. State*, 706 S.W.2d 764, 765–66 (Tex. App.—San Antonio 1986, pet. ref'd) (no error to deny special application instruction about "mere presence" at the scene; charge as submitted "adequately addressed the question of knowing possession raised by the appellant" when it included an abstract Section 6.01(b) instruction).

This issue is distinct from the mens rea "intent to harm or defraud."

## C. The Evidence Raised the Issue of Appellant's Possession, Entitling Him to an Instruction Under Section 6.01

A trial court "must provide the jury with 'a written charge distinctly setting forth the law applicable to the case.'" *Walters*, 247 S.W.3d at 208 (quoting TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007)). "This law requires the trial judge to instruct the jury on statutory defenses, affirmative defenses, and justifications whenever they are raised by the evidence." *Id.* at 208–09. "A defendant is entitled to an instruction on every defensive issue raised by the evidence, regardless of whether the evidence is strong, feeble, unimpeached, or contradicted, and even when the trial court thinks that the testimony is not worthy of belief." *Id.* at 209.

The State contends that appellant's evidence does not entitle him to an instruction under Section 6.01 because appellant does not point to any involuntary physical bodily movement. The State notes that the Court of Criminal Appeals has repeatedly held that a defendant is not entitled to an instruction under Section 6.01(a) unless the evidence raises the issue of the defendant's "physical bodily movements." *See, e.g.*, *Alford*, 866 S.W.2d at 624 ("Voluntariness, within the meaning of Section 6.01(a), refers only to one's physical bodily movements."). For example, an instruction on voluntary conduct was required in a murder case because the defendant testified that his gun accidentally fired when another person bumped him from behind. *Brown*, 955 S.W.2d at 277, 280.

The State's reliance on cases addressing Subsection (a) of Section 6.01 is misplaced. The Court of Criminal Appeals has explained that "possession" describes "a relationship to property; hence . . . the term 'does not go to an act or omission of the defendant.'" *Phelps v. State*, 623 S.W.2d 936, 937 (Tex. Crim. App. 1981) (quoting *Thomas v. State*, 621 S.W.2d 158, 164 (Tex. Crim. App.

9

1981)).  "Possession is not an act, nor is it an omission, but is defined as something distinct from both act and omission."  *Id.* at 937 n.1; *see also* MODEL PENAL CODE § 2.01 cmt. 4 (Official Draft 1962) ("[P]ossession is neither simply a bodily movement nor an omission . . . .").[12]  The Penal Code defines "act" as "a bodily movement," including speech.  *See* TEX. PENAL CODE ANN. § 1.07(a)(1) (West Supp. 2012).  Possession "simply cannot be reduced to specific 'bodily movement' conduct."  *Gorman*, 634 S.W.2d at 686 (Clinton, J., concurring).

Accordingly, we reject the State's argument that appellant was not entitled to a Section 6.01 instruction due to the lack of an involuntary physical bodily movement.  The State acknowledged at oral argument that a Section 6.01 instruction is generally given "in every possession of a controlled substance jury charge—it's just part of the definition of possession."  Indeed, our review confirms that a Section 6.01 instruction is routinely given in cases involving contraband.[13]  The instruction is given frequently even when no evidence raises the issue.  *See, e.g.*, *Moss*, 850 S.W.2d at 795.

The State has not cited any case holding that a defendant was not entitled to an abstract Section 6.01 instruction for a possessory offense.  We have found only two published decisions holding as such, but in both cases there was no evidence that the defendants did not knowingly receive or obtain contraband.  *See Moreno v. State*, 821 S.W.2d 344, 351–52, 356 (Tex. App.—Waco 1991, pet. ref'd) (one defendant had cocaine in his wallet; another defendant had cocaine under the hood of his vehicle; no mention of any evidence about the defendants' not knowingly

---

[12] Section 6.01(a) refers to "an act, an omission, *or* possession."  TEX. PENAL CODE ANN. § 6.01(a) (emphasis added).

[13] *See, e.g.*, *Farris v. State*, 811 S.W.2d 577, 581 (Tex. Crim. App. 1990) (narcotics); *Powell v. State*, 112 S.W.3d 642, 646 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (firearm); *Hutto v. State*, 775 S.W.2d 407, 408–09 (Tex. App.—Dallas 1989, no pet.) (obscene devices).

obtaining or receiving the cocaine); *see also Jones v. State*, 632 S.W.2d 646, 648 (Tex. App.—El Paso 1982, pet. ref'd) (finding "no harm" by the trial court's refusal to instruct on the definition of voluntary possession when no evidence raised the issue; marijuana was found in multiple locations and in plain view inside the defendant's apartment).

We conclude that the evidence in this case is of a different sort. There is some evidence raising the issue of whether appellant knowingly obtained or received identifying information or was aware of his control of the identifying information for a sufficient time to permit him to terminate his control. Upon request, the jury should have been instructed on the issue of possession. *Cf. Troyer v. State*, 516 S.W.2d 163, 164 (Tex. Crim. App. 1974) (trial court erred by not charging on "the knowledge issue" when the "testimony of the appellant clearly raised the defense of lack of knowledge" based on his testimony that he arrived at his apartment shortly before the police, his employees had access to the apartment, and he did not know there was marijuana in the apartment; noting that the State had the burden of proving the defendant "knew the object which he possessed was contraband"); *Ramos v. State*, 478 S.W.2d 102, 103–05 (Tex. Crim. App. 1972) (trial court erred by not charging on the defensive issue concerning whether the defendant "knew that the object he possessed was contraband" when drugs were found inside the wall of the defendant's unlocked shed; court's charge defined possession as "the care, custody, or control or management of the item in question," but "nothing in the charge mention[ed] lack of knowledge"), *overruled on other grounds by Hankins v. State*, 646 S.W.2d 191 (Tex. Crim. App. 1981); *Rodriguez v. State*, 372 S.W.2d 541, 542 (Tex. Crim. App. 1963) (trial court erred by not charging the jury "to the effect that if appellant came into possession of the capsules by having picked them up to keep his nieces from playing with them, and

11

did not know they contained barbiturate that he should be acquitted"; the defendant testified that he did not know what was in the capsules); *Fawcett v. State*, 127 S.W.2d 905, 905 (Tex. Crim. App. 1939) (trial court erred by not charging on "affirmative defense" that "if some person gave him the package and he did not know that it contained marihuana, to acquit him"; evidence was that the defendant had a sack containing marijuana on his person, but the defendant testified that he did not know that the sack contained marijuana, and some person handed him the sack while he sat on a park bench).[14]

## D.    Appellant Suffered "Some Harm"

When error in the jury charge is preserved, as here, reversal is required if the error is "'calculated to injure the rights of the defendant,' which means no more than that there must be *some* harm to the accused from the error." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.19). Reversal is required if we find "some actual, rather than merely theoretical, harm from the error." *Dickey v. State*, 22 S.W.3d 490, 492 (Tex. Crim. App. 1999). In making this determination, we will review the entire record, including the jury charge, state of the evidence, contested issues, weight of probative evidence, and the arguments of counsel. *Abdnor v. State*, 871 S.W.2d 726, 733 (Tex. Crim. App. 1994).

---

[14] Although the Court of Criminal Appeals decided these cases before enactment of the 1974 Penal Code (which altered the method of instructing juries on defensive issues) they reflect the long-standing principle that a defendant cannot be found guilty of a possessory offense unless the defendant knew the matter he possessed was contraband. *See, e.g.*, *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). The Fort Worth Court of Appeals applied this principle when reviewing the sufficiency of the evidence for a conviction based on the possession of identifying information under Section 32.51. *See Richardson v. State*, 328 S.W.3d 61, 65–66, 71 (Tex. App.—Fort Worth 2010, pet. ref'd) (analyzing possession with the "links" test; describing the defendant's defensive theory as "he had no knowledge of the identifying information found in his car"). We similarly apply traditional notions of "possession" in this case.

12

A defendant likely suffers some harm if the omitted instruction "go[es] to the central issue in the case." *Allen v. State*, 253 S.W.3d 260, 267 (Tex. Crim. App. 2008). Harm is also likely when the instruction concerns the defendant's "primary defense." *See Payne v. State*, 33 S.W.3d 374, 376 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (voluntariness of conduct). A defendant "clearly" suffers some harm in the absence of a requested defensive instruction if the absence left the jury no option but to convict the defendant. *Pennington v. State*, 54 S.W.3d 852, 859 (Tex. App.—Fort Worth 2001, pet. ref'd) (finding some harm when the defendant admitted to possessing contraband and no instruction was given on the defense of necessity).

The possession issue permeated the entire trial. Appellant admitted to physically holding the skimmer; his sole defense was that he did not know he had obtained or received identifying information by receiving the skimmer. The State repeatedly argued that it did not need to prove appellant knew he was possessing identifying information, and the State relied heavily on a statutory presumption that appellant was presumed to have the only mens rea identified in the statute because he possessed identifying information of more than three people.

During opening arguments, defense counsel argued, "[T]hey do not have evidence to show Mr. Ramirez had any knowledge of what was on this machine. . . . You will hear that they do not have evidence to show that Mr. Ramirez actually had knowledge of what that machine was. . . . [J]ust like we talked about in voir dire, that is the key element that they are going to be missing."

As discussed above, appellant's evidence supported this defense, but he was not permitted to fully present his defensive theory. Defense counsel questioned Special Agent Hutchins: "Now isn't it true that [to] complete possession, you not only have to have care, custody, control, management, but you also have to have

13

knowledge of what it is you are possessing?" The State objected because "there is no knowingly in it," and the trial court sustained the objection. Counsel later asked Hutchins if appellant had a way of knowing that the skimmer had credit card numbers on it. The State objected again, "Knowingly is not in the indictment," and the trial court sustained the objection. Then a discussion was held outside the jury's presence. Initially the State argued that it did not have to prove knowing possession because the statute and indictment did not use the word "knowingly." When defense counsel explained, "That is part of the simple definition of possession," the State responded, "I will allow him to ask the questions. I apologize. It will be up to the province of the jury. I will withdraw my objection." The trial court agreed, "It is an issue for the jury to decide." Accordingly, appellant was led to believe initially that he would be able to present this defensive issue to the jury.

Later, however, defense counsel asked Sergeant Joel Jorski, "Well, you would agree with me that to have legal possession of something, you have to have knowledge of what you are possessing?" The State objected, "Misstatement of the law in this case," and the trial court sustained. Jorski testified, "I would have to say that just holding the device is when, yes, he took possession."

On the next day of trial, another discussion was held outside the jury's presence. Again, the State made inconsistent arguments on the issue of possession:

> I have no problem with saying he knew he was possessing contraband. . . . [Y]ou have to know it's contraband, I agree, but you don't have to know what the credit card numbers are or anything like that. . . . [A]ll I have to prove is he had that device and he knew it was contraband. . . . [A]ll I have to prove is it was contraband, and that he knew it was contraband. . . . All it says is that he has to possess that device knowing that there are numbers on there and knowing that there is something funky about it.

Again, this discussion likely led appellant to believe that he could present his defense to the jury. Immediately after this discussion, appellant waived his Fifth Amendment right and testified in support of his sole defensive issue. He testified that he did not participate in a skimming scheme, he did not know what the skimmer was, he thought it was a walkie-talkie or recorder, he did not look into it and see what was in it, and he did not own any software that could look into the device.

The closing arguments again dealt with appellant's defensive theory and the statutory presumption. The State began:

> In reality, the only thing we're talking about here is the possession of that device with intent to defraud and harm another. Now, the defendant took the stand and admitted he took the device and we know that there were 56 credit cards on the device. And as the charge will tell you, if there is more than three people then you can presume that he had the intent to defraud or harm you. I want you to remember this, the only thing that we have to prove is that the defendant had that device and he had that intent. Now, no matter what the defense attorney gets up here and says, that is the law.

Defense counsel said, "I agree with the prosecutor about this, he has to prove possession." When counsel suggested that the State would need to prove appellant "had knowledge of the information," the State objected to a misstatement of the law, and the trial court sustained the objection. Counsel argued:

> I know they are going to use the word possession and say, you know he possessed it because he held it in his hand. Clearly, ladies and gentlemen, we showed you where the law is not that. They have to show you that he knew what was in there.

The State objected to a misstatement of the law, and the trial court sustained the objection. Counsel continued, "[T]o prove possession the State must show that Mr. Ramirez exercised control, management—." The State objected, and the trial

15

court sustained the objection.

In rebuttal, the State argued, "Now, the defense attorney talked a lot about knowing, knowing what is on the machine. That is not how the law is written." Defense counsel objected to a misstatement of law, and the trial court overruled the objection. The State continued, "Why is it written that way? Well, look at this case." The State also addressed the statutory presumption: "Nobody is disputing that there were 56 credit card numbers in the device. And nobody is disputing that there is a presumption if you have more than three you automatically have the intent to defraud and harm." Defense counsel objected to a misstatement of the law, and the trial court overruled.[15]

Further, after reviewing the charge as a whole, we find that the jury had no option but to convict the defendant. The error was compounded by the inclusion of a statutory presumption without additional instructions concerning presumptions found in Section 2.05 of the Penal Code.[16] The predicate fact of the presumption for "intent to harm or defraud" was that appellant "possesse[d] the identifying information of three or more other persons." Because appellant's theory concerning possession was omitted from the charge, the jury had no option but to find the predicate fact true, thus "automatically" (as the State argued) supplying intent to harm or defraud.

---

[15] The State finished its argument by asking the jury to "go back there and tell him we don't want that in Harris County, go back to where you came from." Defense counsel objected and requested a mistrial, which the trial court denied. Appellant cites this improper argument in support of his third issue on appeal concerning the admission of testimony about appellant working illegally in the United States. Because we have found harmful error in the jury charge, we do not address appellant's third issue on appeal. *See* TEX. R. APP. P. 47.1

[16] The State conceded at oral argument that the charge erroneously omitted instructions required by Section 2.05. These instructions would have told the jury that they had to find the predicate facts proven beyond a reasonable doubt before considering the presumption, and even if they did, they would not be required to use the presumption. *See* TEX. PENAL CODE ANN. § 2.05(a)(2).

Finally, the State argues on appeal that appellant suffered no harm because the State mentioned during closing argument that "if a person just had a device, without know[ing] what is on it, without the intent to defraud or harm another, is he guilty? Of course he's not." Given the multiple other conflicting statements made during closing argument, the state of the evidence, and the jury charge as a whole, we nonetheless conclude that appellant suffered "some harm" as a result of the trial court's refusal to submit an instruction pursuant to Section 6.01 of the Penal Code. "Lack of the requested instruction effectively prevented appellant from presenting his defense and is not harmless." *Louis v. State*, No. PD-0323-11, — S.W.3d —, 2012 WL 2007632, at *8 (Tex. Crim. App. June 6, 2012).

Appellant's first issue is sustained.

## CONCLUSION

Having sustained appellant's first issue, we reverse the trial court's judgment and remand for further proceedings.[17]

/s/          Sharon McCally
             Justice

Panel consists of Justices Christopher, Jamison, and McCally.

Publish — TEX. R. APP. P. 47.2(b).

---

[17] We decline to address appellant's second and third issues. *See* TEX. R. APP. P. 47.1.

17