ACCEPTED
03-14-00806-CR
4423128
THIRD COURT OF APPEALS
AUSTIN, TEXAS
3/9/2015 2:35:25 PM
JEFFREY D. KYLE
CLERK

## No. 03-14-00806-CR

IN THE THIRD COURT OF APPEALS
AT AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
3/9/2015 2:35:25 PM
JEFFREY D. KYLE
Clerk

DELANE DUMAS

Defendant – Appellant

vs.

THE STATE OF TEXAS

Plaintiff – Appellee

On Appeal from the County Court at Law
Number Five of Travis County, Texas
Hon. Nancy Wright Hohengarten Presiding
Trial Court Cause No. C-1-CR-13-219171

APPELLANT'S BRIEF

Gregory Sherwood
Attorney
P.O. Box 200613
Austin, Texas 78720-0613
(512) 484-9029
Email: gsherwood@mail.com
State Bar No. 18254600

Court-Appointed Attorney on
Appeal for Delane Dumas

**ORAL ARGUMENT REQUESTED**

**Identity of Parties and Counsel**

No. 03-14-00806-CR; *Delane Dumas v. The State of Texas*

<u>Delane Dumas</u> (Defendant – Appellant):

Delane Dumas
c/o attorney Gregory Sherwood

Trial Counsel:                                    Appellate Counsel:

Adam Reposa (retained)                  Gregory Sherwood (appointed)
1106 San Jacinto Street, Suite A        P.O. Box 200613
Austin, Texas 78701                         Austin, Texas 78720-0613

McKinley Melancon (2nd chair)
1307 Nueces Street
Austin, Texas 78701

<u>The State of Texas</u> (Plaintiff – Appellee):

Brandy Gann
Christyne Harris Schultz
Travis County Assistant County Attorneys
P.O. Box 1748
Austin, Texas 78767-1748

## Table of Contents

Identity of Parties and Counsel ........................................................................ i

Table of Contents .......................................................................................... ii

Index of Authorities ...................................................................................... iv

Statement of the Case ................................................................................... vi

Statement Regarding Oral Argument ........................................................... vii

Issues Presented .......................................................................................... vii

      Issue 1:  The trial court erred in admitting the two 911
      calls on State's Ex. 4 because the probative value of the
      calls was substantially outweighed by the danger of unfair
      prejudice, confusion of the issues, and misleading the jury ............. vii

      Issue 2: The traffic stop video (State's Ex. 3)  should have
      been suppressed because the officer did not have reasonable
      suspicion to stop appellant's vehicle.  The officer did not
      observe any reckless driving, speeding or traffic violations
      by appellant, and the trial court's reasoning that the officer
      had reasonable suspicion to stop based on reckless driving
      or driving while intoxicated based on the prior 911 calls is
      incorrect because the officer did not know the substance of
      those calls, and did not sufficiently corroborate what was
      reported to him by the dispatcher .................................................... viii

Statement of Facts ......................................................................................... 1

Summary of the Argument ............................................................................. 5

Argument and Authorities .............................................................................. 6

      Issue 1 ................................................................................................ 6

Facts Relevant to this Issue ....................................................... [7](#)

Standard of Review and Legal Authorities ............................ [13](#)

Issue 2 ................................................................................... [17](#)

Facts Relevant to this Issue ....................................................... [17](#)

Standard of Review and Legal Authorities ............................ [21](#)

Conclusion and Prayer for Relief .................................................. [24](#)

Certificate of Service ................................................................... [24](#)

Certification of Compliance ......................................................... [24](#)

## Index of Authorities

Cases

*Bagheri v. State*, 119 S.W.3d 755 (Tex. Crim. App. 2003) ........................ 13

*Brother v. State*, 166 S.W.3d 255 (Tex. Crim. App. 2005) ........................ 22

*Castro v. State*, 227 S.W.3d 737 (Tex. Crim. App. 2007) ........................ 22

*Davis v. State*, 989 S.W.2d 859
(Tex. App. – Austin 1999, pet. ref'd) ........................................ 22

*Mahaffey v. State*, 316 S.W.3d 633 (Tex. Crim. App. 2010) ........................ 2

*Mahaffey v. State*, 364 S.W.3d 908 (Tex. Crim. App. 2012) ........................ 2

*Miller v. State*, 335 S.W.3d 847
(Tex. App. – Austin 2011, no pet.) ............................................ 21

*Montgomery v. State*, 810 S.W.2d 372
(Tex. Crim. App. 1991) (op. on reh'g) ........................................ 13

*Motilla v. State*, 78 S.W.3d 352 (Tex. Crim. App. 2002) ........................ 13

*Potier v. State*, 68 S.W.3d 657 (Tex. Crim. App. 2002) ........................ 13


Constitutional Provision, Statutes, and Rules

Tex. R. App. P. 44.2(b) ........................................................ 13

Tex. R. App. P. 9.4(i)(1) ...................................................... 24

Tex. R. Evid. 403 ................................................ 10, 13, 14, 16

Tex. Transp. Code § 545.104(a) ................................................ 2

Tex. Transp. Code § 545.104(b) .................................................................... 20

U.S. Const. Amend. IV ............................................................................. 22

# No. 03-14-00806-CR

## IN THE THIRD COURT OF APPEALS
## AT AUSTIN, TEXAS

DELANE DUMAS

                                        Defendant – Appellant

vs.

THE STATE OF TEXAS

                                        Plaintiff – Appellee

On Appeal from the County Court at Law
Number Five of Travis County, Texas
Hon. Nancy Wright Hohengarten Presiding
Trial Court Cause No. C-1-CR-13-219171

## APPELLANT'S BRIEF

TO THE HONORABLE THIRD COURT OF APPEALS:

NOW COMES DELANE DUMAS, who files Appellant's Brief, and

respectfully states as follows:

## Statement of the Case

This is an appeal from a jury verdict finding Delane Dumas guilty of

driving while intoxicated ("DWI").  Clerk's Record ("CR") 43 (jury

verdict).  Appellant waived his right to have the jury assess punishment, pleaded true to one prior DWI conviction, and the trial court sentenced Mr. Dumas to one year in the county jail and a $4,000 fine, but suspended that sentence and placed appellant on community supervision for 20 months, including 80 hours of community service, installing an ignition interlock device for ten months, and serving five days in jail as a condition of community supervision.  CR 44-47.  Reporter's Record ("RR") vol. 3, pp. 191-195 and CR 80-82 (judgment).

## Statement Regarding Oral Argument

Although Mr. Dumas' court-appointed appellate counsel believes that the facts and argument are adequately presented in the briefs, oral argument is requested to answer any questions that this court may have which are not answered by the parties' briefs.

## Issues Presented

Issue 1:  The trial court erred in admitting the two 911 calls on State's Ex. 4 because the probative value of the calls was substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.

Issue 2: The traffic stop video (State's Ex. 3)  should have been suppressed because the officer did not have reasonable suspicion to stop appellant's vehicle.  The officer did not observe any reckless driving, speeding or traffic violations by appellant, and the trial court's reasoning that the officer

had reasonable suspicion to stop based on reckless driving or driving while intoxicated based on the prior 911 calls is incorrect because the officer did not know the substance of those calls, and did not sufficiently corroborate what was reported to him by the dispatcher.

## Statement of Facts

This appeal presents two questions, the first being whether the trial court erred in admitting audio of two 911 calls which stated that appellant's vehicle was driving 90 miles per hour, nearly sideswiped a vehicle, and that the driver was texting while driving, when the arresting officer admitted that he did not know the substance of those calls, only that a reckless driving or driving while intoxicated call had been made to the dispatcher. The second issue presented is whether reasonable suspicion existed to conduct a traffic stop to perform field sobriety tests of Mr. Dumas when the officer knew only that a 911 call for reckless driving was made (but not all the details of those calls which the jury heard), observed appellant "weaving" inside his lane, but never crossing into another lane, and then initiated the stop for failure to use a turn signal to enter the freeway, which was a mistake of law because a turn signal was not required since that was a lane dedicated to entering the freeway only, with no option for traveling into another lane.[1]

---

[1] The arresting officer mistakenly stated in his testimony that Dumas did not use a turn signal to move from the center lane of the freeway to the

1

On November 9, 2013, the Austin Police Department ("APD")

received two 911 calls, one from an unnamed female stating that she

observed a vehicle in northern Hays County traveling approximately 90

miles an hour, and a second from a male who gave his name, stated that the

vehicle nearly sideswiped him, was driving erratically from lane to lane and

had erratic speed, and that the driver was texting while driving. The details

of those calls contained on State's Ex. 4, with record citations, is contained

in the argument section for Issue 1. APD Officer Manuel Delgado Eberhardt

learned of the 911 calls through the dispatcher, but did not know all of what

was said on those calls. Eberhardt first observed appellant's vehicle

traveling northbound on Interstate 35 near Ben White. Officer Eberhardt

followed this vehicle and initiated a traffic stop just north of Lady Bird Lake

and the Holly Street exit after the officer believed that he saw Mr. Dumas

---

exit lane, but State's Ex. 3 shows appellant using a turn signal to exit the
freeway from the middle lane at 10:56:20, and not using a turn signal to
enter the freeway from the dedicated lane at 10:56:50. After State's Ex. 3
was played at the suppression hearing outside the jury's presence, both the
trial court and the officer agreed that appellant used a turn signal to exit
the freeway. RR vol. 3, p. 69, l. 24 to p. 70, l. 6 (pdf 71, l. 24 to pdf 72, l.
6). Since using a dedicated lane to enter the freeway is not a change from
one lane to another, a turn signal is not required under Tex. Transp. Code
§ 545.104(a). *See Mahaffey v. State*, 316 S.W.3d 633 (Tex. Crim. App.
2010) and *Mahaffey v. State*, 364 S.W.3d 908 (Tex. Crim. App. 2012) (no
turn signal needed when two lanes merge into one, so no reasonable
suspicion to initiate traffic stop; reversed and remanded since trial court
erred in failing to suppress evidence obtained from the stop).

2

fail to use a turn signal to exit the freeway, and fail to use a turn signal to re-enter the highway from a dedicated lane which was for entry onto the freeway only. Officer Eberhardt performed the HGN test on Dumas, but he did not perform the one-leg stand or walk and turn test because he was unable to walk without a cane due to recent injuries, and Mr. Dumas could not balance for 30 seconds on one leg because of those same injuries. State's Ex. 3 at time index 11:08:20 to 11:17:10. Officer Eberhardt arrested Dumas for driving while intoxicated, and during an inventory search of the vehicle, found a flask which contained a few drops of alcohol, which the officer poured onto the ground as shown in State's Ex. 4 at time index 11:26:20 p.m. This video is discussed in more detail below in the argument section of this brief.

Appellant was tried on the charge of driving while intoxicated (2nd offense), with the jury hearing from Officer Eberhardt and the APD 911 operator who authenticated the 911 calls. The jury also heard the two 911 calls (State's Ex. 4) and viewed the traffic stop video (State's Ex. 3), after the trial court overruled appellant's objections to both exhibits, which included a hearing outside the jury's presence on Mr. Dumas' oral motion to suppress State's Ex. 3, the traffic stop video. RR vol. 3, pp. 2-8 (pdf 4-10)

3

and 59-70 (pdf 61-72). Dumas' case-in-chief consisted of a person who had known him for many years who testified that Mr. Dumas' voice on State's Ex. 3 was the same as his normal voice, and this did not indicate that he was intoxicated. RR vol. 3, pp. 143-148 (pdf 145-150). The State in rebuttal played a jail phone call (State's Ex. 5) from several hours after the stop in an effort to show that appellant's voice on the traffic stop video was different than his voice on the later-recorded jail phone call. RR vol. 3, pp. 168-169 (pdf 170-171).

The jury deliberated from 5:27 p.m. to 7:48 p.m., RR vol. 3, p. 200, l. 24-25 (pdf 202), and found Mr. Dumas guilty of driving while intoxicated. CR 43 and RR vol. 3, p. 201 (pdf 203). The jury did not hear punishment evidence, as the parties negotiated an agreement on punishment. RR vol. 3, pp. 201-206 (pdf 203-208). Dumas gave up his right to have the jury assess punishment and pleaded true to the prior DWI conviction listed in the information. RR vol. 3, pp. 206-208 (pdf 208-210). The trial court stated that formal sentencing would occur the next day in the class A misdemeanor punishment range when the probation office would be present. RR vol. 3, p. 208, l. 15-18 (pdf 210). The trial court's written judgment sentenced Mr. Dumas to one year in the county jail and a $4,000 fine, but suspended that

4

sentence and placed Dumas on 20 months community supervision, with terms of 80 hours of community service, installing an ignition interlock device for ten months, and serving five days in jail as a condition of community supervision. CR 44-47.

The trial court signed a certification of defendant's right of appeal, CR 73, and Mr. Dumas timely filed his *pro se* notice of appeal. CR 57. This writer was appointed to represent Dumas on appeal. CR 54 and 56.

## Summary of the Argument

The two 911 calls contained on State's Exhibit 4 should not have been admitted into evidence because the jury heard details in those calls that the arresting officer was not aware of the night of the incident, including that appellant's vehicle nearly sideswiped one caller's vehicle and that appellant was texting while driving. The arresting officer did not observe any excessive speed by appellant, whose vehicle did not make any lane changes without signaling. The probative value of these calls was substantially outweighed by the danger of unfair prejudice, confusion of the issues and misleading the jury.

The trial court erred in denying appellant's verbal motion outside the jury's presence to suppress State's Ex. 3, the video of the traffic stop. The

officer did not have reasonable suspicion to stop the appellant because the officer mistakenly thought appellant needed to use his turn signal to re-enter the freeway from a dedicated lane which only permitted vehicles to re-enter the highway. A turn signal is not required in that instance, and the officer made a mistake of law in believing that was a traffic violation which permitted his stop of Mr. Dumas. Additionally, the officer did not sufficiently corroborate the facts that were relayed to him from the 911 calls by the dispatcher – that the vehicle had been driving 90 miles per hour and making unsafe lane changes. Dumas' vehicle was traveling at 50 miles per hour in a 60 mile per hour zone when the officer first observed him, and the vehicle did not increase its speed while the officer pursued. There were also no observations by the officer (or on State's Ex. 3) of any lane changes by Mr. Dumas, and the officer admitted that a vehicle drifting in its lane, but not crossing over to another lane, was not a traffic offense. As a result, the officer did not have reasonable suspicion to stop Mr. Dumas, and any evidence obtained from that stop should have been suppressed.

## Argument and Authorities

Issue 1: The trial court erred in admitting the two 911 calls on State's Ex. 4 because the probative value of the calls was substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.

6

Appellant objected outside the jury's presence to State's Ex. 4, a CD containing two recorded phone calls made to an APD 911 operator concerning the substance of what was stated on those calls, stating that Dumas had the right to confront the callers on the substance of what they stated to the 911 operator. RR vol. 3, pp. 3-4 (pdf 5-6). State's Ex. 4, which is a two minute audio recording of two 911 calls, was played aloud outside the jury's presence. RR vol. 3, p. 4 (pdf 6), l. 15-16.

The first caller informed the APD 911 operator that she was reporting a reckless driver traveling on "I-35 northbound past the 220 exit about to enter your jurisdiction." State's Ex. 4 at 00:05 to 00:12. The caller provided the vehicle's description and license plate number, and stated that "the vehicle is unable to maintain [a] single lane. It is in the middle lane at this time going approximately 90 miles an hour." Id. at 00:15 to 00:38. The female caller's name is not identified on the CD. According to the website, www.mapquest.com, accessed March 4, 2015, exit 220 on Interstate 35 is in Hays County, near Buda.

The second 911 call on State's Ex. 4 begins at 00:39 with a male caller identifying himself as J.D. Hines, who provided his phone number.

7

*Id.* at 00:39 to 00:54. Mr. Hines stated that "he almost sideswiped us, and so we were, we called 911, and he's real erratic on the speed." *Id.* at 00:55 to 1:12. Hines confirmed the vehicle's license plate number when asked by the 911 operator, including the license plate number. *Id.* at 1:12 to 1:25. Mr. Hines advised that, "We're at exit 225. He's in the right hand lane. But he's been everywhere from the left-hand lane to the middle lane to sideswiping us. Oh, he's looking down and texting!" *Id.* at 1:30 to 1:45. The operator said, "Just to confirm, you're not following the vehicle intentionally, are you?" and Mr. Hines replied, "No, no, good gravy, we're trying to stay the heck away from him." *Id.* at 1:47 to 1:52. The call concluded with Hines stating, "All right, we're coming across exit 226, he's in the right-hand lane. Good luck." Id. at 1:56 to 2:01. Exits 225 and 226 of Interstate 35 are in southern Travis County, just south of Slaughter Lane, based on this writer's review of the road map on [www.mapquest.com](www.mapquest.com), accessed March 4, 2015.

After the trial court listened to State's Ex. 4, the court asked the State to explain why it was admissible. RR vol. 3, p. 4 (pdf 6), l. 17-18. The State responded that the calls were in response to an ongoing emergency, making them non-testimonial statements not subject to a confrontation clause objection, that the calls were excluded from the hearsay rule as present sense

8

impressions, and that the call taker would testify, presumably to authenticate the recordings. RR vol. 3, pp. 4-5 (pdf 6-7).

Appellant responded that it was said on the recording, "No, we're behind him; we're trying to stay away from him," and that prior to the call, "He almost sideswiped us. Now, he's looking down at his phone and texting," and that these were not "direct observations of a crime as it's occurring." RR vol. 3, p. 5 (pdf 7), l. 16-25. The court asked if these calls described reckless driving, and appellant responded that the callers were describing how appellant was driving, which "could very easily be taken as substantive evidence in this case. [¶] So without any opportunity to cross-examine them, certainly we have a confrontation objection. . . . [¶] The whole idea of confrontation is you want your own lawyer to be able to ask the questions and not a person working for the courts. Here, law enforcement/call taker asking questions, getting the information they want. And that's the only side presented to the jury." RR vol. 3, pp. 6-7 (pdf 8-9). The trial court overruled Mr. Dumas' objections outside the jury's presence, and informed trial counsel that "you can definitely renew your objection when we – before we play it to the jury." RR vol. 3, p, 8 (pdf 10), l. 20-22.

APD 911 operator Christian Davis testified that he was on duty on

9

November 9, 2013, that he took the calls on State's Ex. 4, which occurred at about 10:45 p.m., stated that the title code of those calls was "DWI/Reckless Driving," that he reviewed the audio and confirmed that the recordings were accurate, and that the calls were taken in the normal course of business of the police department. RR vol. 3, pp. 57-58 (pdf 59-60). The State offered State's Ex. 4, and appellant objected to its admission in front of the jury on hearsay, violation of confrontation clause because appellant could not confront the callers on Ex. 4 by cross-examination, and under Tex. R. Evid. 403 because, "I think there is a very high danger of unfair prejudice, given the fact that these people are going to give just one rendition, without the jury hearing the whole story." RR vol. 3, p. 59 (pdf 61), l. 3-16. The trial court overruled appellant's objections, the witness was excused, and State's Ex. 4 was played to the jury. RR vol. 3, pp. 59-60 (pdf 61-62).

APD Officer Manuel Delgado Eberhardt, who conducted the traffic stop of appellant, responded to a call at about 10:56 p.m. on November 9, 2013 concerning a 911/reckless driving call, and told the jury, "The call was on 35, quite a bit further south than where I was. *And the call text that shows up on my computer screen said that they were driving very fast, somewhere around 90 miles an hour, and they were swerving*[,]" and Officer

10

Eberhardt waited for appellant's vehicle at Interstate 35 and Ben White. RR vol. 3, pp. 19-20 (pdf 21-22) (italics added). More details concerning the traffic stop are discussed below in Issue 2, but for purposes of this issue, Officer Eberhardt did not personally observe any acts of reckless driving or excessive speed by appellant. RR vol. 3, p. 22, l. 23 to p. 23, l. 8 (pdf 24-25) and p. 121, l. 25 to p. 122, l. 8 (pdf 123-124). Additionally, Eberhardt admitted that he did not know the substance of the 911 calls contained on State's Ex. 4 when he stopped appellant, only that there was a call relating to a DWI or reckless driving, involving someone driving 90 miles per hour and swerving. RR vol. 3, p. 20, l. 1-12 (pdf 22). Thus, the jury heard more information concerning the offense than the arresting officer, and appellant was unable to cross-examine either of the two 911 callers concerning the accuracy of their observations.

During the State's closing argument, the prosecutor stated, "We had the 911 call, where you hear the person that's, you know, watching him, that's been driving near him, talk about how he's driving erratically, recklessly, speeding. *How he almost sideswiped the caller*. Describing very dangerous driving." RR vol. 3, p. 174, l. 1-5 (pdf 176) (italics added). During appellant's closing argument, trial counsel informed the jury that the

11

officer did not know what was said on the 911 calls, "He told you he did not have the call text; just some 911 call about a possible drunk driver, possible reckless driver attached to this car. If that was enough to form reasonable suspicion to stop him, guess what he would have done? Stopped him. He would have stopped him. Game over. We're done." RR vol. 3, p. 185, l. 2-7 (pdf 187).

In the state's final closing argument, during the portion discussing whether the officer had reasonable suspicion to stop appellant's vehicle, the prosecutor again told the jury of the substance of the 911 calls (which the officer admitted he did not know), as a reason for the traffic stop:

> So in this case, there were numerous things that you could look to as to why there was facts that support that he had been, is currently, or is going to engage in a criminal activity. Criminal activity being reckless driving. Reckless driving is a crime. Speeding, driving 90 miles per hour, *like we heard on the 911 call*, that was a crime. *Almost colliding with another vehicle*, unsafe, you know, unsafe –

RR vol. 3, p. 196, l. 4-11 (pdf 198) (italics added). After appellant objected and the court ruled that the jury could determine whether there was reasonable suspicion to stop appellant's vehicle, RR vol. 3, pp. 196-197 (pdf 198-199), the prosecutor continued discussing the substance of the 911 calls, "Point being, officer has a tip from this 911 call, *which you all got to hear*

12

*what the content of that was*.  That person was driving recklessly."  RR vol. 3, p. 197, l. 13-15 (pdf 199) (italics added).

<u>Standard of Review and Legal Authorities</u>

An appellate court reviews the trial court's decision to admit evidence for an abuse of discretion.  *Montgomery v. State*, 810 S.W.2d 372, 390-392 (Tex. Crim. App. 1991) (op. on reh'g).  A violation of the rules of evidence is generally non-constitutional error.  *Potier v. State*, 68 S.W.3d 657, 662-663 (Tex. Crim. App. 2002).  This type of error must be disregarded if it does not affect appellant's substantial rights.  Tex. R. App. P. 44.2(b).  The error is harmless if the appellate court has "fair assurance that the error did not influence the jury, or had but a slight effect."  *Bagheri v. State*, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003).  To analyze harm, this court considers the entire record, including testimony, physical evidence, the nature of the evidence supporting the verdict, the character of the alleged error, the State's theory, the defensive theory, and closing arguments.  *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

Tex. R. Evid. 403 states, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by

13

considerations of undue delay, or needless presentation of cumulative evidence." In the case at bar, appellant's objection to the 911 calls contained on State's Ex. 4 should have been granted on Rule 403 grounds, because the probative value of those calls was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. The first caller, an unnamed female, reported a reckless driving offense in Hays County, since the vehicle was traveling 90 miles per hour. But this Hays County offense could not have been prosecuted in Travis County because of lack of venue. Officer Eberhardt admitted that when he first saw appellant's vehicle and pulled behind the vehicle, it was traveling 50 miles per hour in a 60 mile per hour zone, and Eberhardt never observed appellant's vehicle traveling 90 miles per hour. RR vol. 3, p. 20 (pdf 22). Yet, in the State's closing argument, it emphasized that the jury could consider the 911 caller's report that appellant was traveling 90 miles per hour, which had to have occurred in Hays County, and which did not occur during the time Officer Eberhardt followed and then stopped appellant's vehicle.

The second caller, a man who identified himself as J.D. Hines, reported being nearly sideswiped by appellant's vehicle, that the speed of that vehicle was erratic, that the vehicle was changing lanes, and that the

14

driver was texting while driving, with all of this occurring in southern Travis County. The State discussed the sideswiping report in its closing argument, which was an event that Officer Eberhardt did not know about when he stopped appellant, since that was not included in the dispatcher's text of the 911 call. The State did not discuss the texting while driving offense in its closing argument, but the jury could have considered this extraneous offense in determining whether to convict appellant of driving while intoxicated. When Officer Eberhardt first observed appellant's vehicle and then followed it, he did not observe any erratic speed or unsafe lane changes as had been reported by Mr. Hines.

Officer Eberhardt admitted that he did not know what was stated in the 911 calls, only that the call text displayed to him was of a report of a possible driving while intoxicated or reckless driving offense involving someone driving more than 90 miles per hour and swerving. RR vol. 3, p. 20, l. 1-12 (pdf 22). Yet, the jury was told more than the arresting officer knew when the jury heard the 911 calls, including the texting while driving offense and the vehicle nearly sideswiping Mr. Hines' vehicle, both in southern Travis County, and the 90 mile per hour offense, which actually occurred in Hays County as reported by the unknown female caller. Even if

15

these additional facts were probative of whether appellant was driving while intoxicated in the Travis County portion of Interstate 35, the relevance was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, because the State emphasized portions of the substance of the 911 calls in its closing argument, discussed above, and because the jury was also informed of the texting while driving offense, and the vehicle nearly sideswiping another vehicle, both reported by caller Hines. Harmful error is shown because the traffic stop video itself (State's Ex. 3) did not show any traffic offenses by Mr. Dumas, the speed his vehicle was traveling was not 90 miles per hour, but in the 50 mile per hour range described by the officer, and appellant did not appear intoxicated to this writer during the traffic stop video, which will be discussed in more detail in Issue 2, below. If the 911 calls not been admitted, the jury may have acquitted Dumas since the traffic stop video did not show someone obviously intoxicated. Additionally, without the 911 calls, the jury would not have known of the texting while driving offense observed by Hines, and that appellant allegedly sideswiped another vehicle. State's Ex. 3 should have been excluded under Evidence Rule 403, the error was harmful, and this court should grant this issue, and reverse and remand for a new trial.

16

Issue 2: The traffic stop video (State's Ex. 3) should have been suppressed because the officer did not have reasonable suspicion to stop appellant's vehicle. The officer did not observe any reckless driving, speeding or traffic violations by appellant, and the trial court's reasoning that the officer had reasonable suspicion to stop based on reckless driving or driving while intoxicated based on the prior 911 calls is incorrect because the officer did not know the substance of those calls, and did not sufficiently corroborate what was reported to him by the dispatcher.

Facts Relevant to this Issue

The traffic stop video, State's Ex. 4, is approximately one hour long, beginning on November 9, 2013 at time index 10:54:43 p.m. and ending at 11:53:48 p.m. At the 10:55:45 time index mark, State's Ex. 4 shows a dark colored car moving to the right of the lane in which it is traveling, but not moving into the next lane. At 10:56:00, the vehicle moves to the left of the lane, but again does not travel into the next lane. At 10:56:20, the vehicle's right turn signal activates as it travels from the middle lane to the right lane, and then exits the Interstate 35 at the Holly Street exit. The vehicle stays in this left lane of the frontage road, which is a dedicated lane that re-enters the highway, and the vehicle re-enters Interstate 35 from that dedicated lane without activating a left turn signal at 10:56:50. Officer Eberhardt activated his vehicle's police lights at 10:57:03, and once Mr. Dumas' vehicle stopped, the officer told Dumas that he was being pulled over because he

17

failed to exit intent when he exited 35 and got back onto 35. State's Ex. 4 from 10:57:03 to 10:58:45.

At 11:00:45 of State's Ex. 4, the officer asked Mr. Dumas to step out of the car, and Dumas is seen standing straight for a time, and he then leaned against the car while waiting for the officer at 11:01:40.[2] Mr. Dumas told the officer that he was coming from a friend's house on Riverside, State's Ex. 4 at 11:03:00, which Officer Eberhardt knew to be false since he had observed Dumas traveling northbound on Interstate 35 from the Ben White area. Eberhardt asked Mr. Dumas if he had been drinking, and Dumas replied no. State's Ex. 4 at 11:04:20.[3] Mr. Dumas informed the officer that he had a right leg injury and a spine injury, and that he had taken some hydrocodone around 7 p.m. that same evening. State's Ex. 4 from 11:04:40 to 11:06:08. The officer asked to perform the HGN field sobriety test, and Mr. Dumas initially refused saying that it had no validity (11:08:40), but the

---

[2] Officer Eberhardt testified that appellant immediately leaned on his vehicle for support, RR vol. 3, pp. 133-134 (pdf 135-136), but this writer's view of State's Ex. 4 does not support that conclusion. The officer also testified that his notes indicated that Mr. Dumas had a side-to-side sway in his stance, but Eberhardt also stated that he could not recall if this was apparent on the video. RR vol. 3, p. 123, l. 16-24 (pdf 125). This writer could not see any side-to-side sway by Dumas on State's Ex. 4.

[3] Officer Eberhardt informed the jury that he did not believe appellant's statement that he had not been drinking because appellant smelled of alcohol and had slurred speech. RR vol. 3, p. 33, l. 8-17 (pdf 35).

officer conducts the test anyway. Dumas' back is to the camera, so his eye movement cannot be observed; however, this writer did not see any swaying or leaning, nor did Mr. Dumas' head appear to be moving during this test. State's Ex. 4 from 11:09:05 to 11:12:17. According to Officer Eberhardt's testimony, Dumas showed 6 out of 6 possible clues on the HGN test. RR vol. 3, p. 47, l. 5-7 (pdf 49). This cannot be confirmed by viewing the video, since Dumas' back is to the camera.

Eberhardt informed Mr. Dumas of the instructions to perform the walk and turn test, but when Dumas asked if he could use his cane during this test and the officer said no, Mr. Dumas stated that he could not perform the test since he needed to use the cane and there would be irregularity in his steps. State's Ex. 4 from 11:12:17 to 11:15:55. The officer told Dumas the instructions for the one-leg stand test, and that he would have to stand on one leg for 30 seconds, but Mr. Dumas stated that his injuries prevented him from performing that test. *Id.* from 11:16:30 to 11:17:10.

Officer Eberhardt informed Dumas that "we got a call about your driving," that Eberhardt did not remember the text of the call, "probably swerving, maybe speeding," the officer stated that he saw Mr. Dumas swerving, which was not necessarily a crime, but might be a sign of

19

intoxication, and that Dumas was stopped because he exited and entered the freeway without using a turn signal. *Id.* from 11:17:50 to 11:18:25. The officer then placed Mr. Dumas under arrest for driving while intoxicated at 11:18:50. Dumas refused to give a specimen of his blood or breath. *Id.* from 11:22:10 to 11:24:35. Officer Eberhardt searched appellant's vehicle, which contained a cane in the passenger area (11:25:45), and a flask which the officer emptied and described as containing a couple of drops and smelling like alcohol. State's Ex. 4 at 11:26:20. Mr. Dumas asked the officer what bearing the flask had on this situation because it was a week old, and Eberhardt replied that it was "just another factor in the arrest." *Id.* from 11:29:20 to 11:30:00.

Outside the jury's presence, appellant moved to suppress the evidence obtained as a result of the traffic stop shown on State's Ex. 4 because no turn signal was required to re-enter Interstate 35 from the dedicated left lane on the frontage road, and therefore, Officer Eberhardt had no reasonable suspicion to conduct a traffic stop. RR vol. 3, pp. 62-63 (pdf 64-65). Eberhardt admitted that at the time he stopped Mr. Dumas, he believed that Dumas had committed a violation of Tex. Transp. Code § 545.104(b)[4] by not

---

[4] "An operator intending to turn a vehicle right or left shall signal continuously for not less than the last 100 feet of movement of the vehicle

20

signaling a lane change 100 feet before a turn, but the trial court ruled that this statute only pertained to turns, not lane changes. RR vol. 3, pp. 68-69 (pdf 70-71). The trial court noted that Mr. Dumas used a turn signal to exit the highway, but not for re-entering the highway from the dedicated lane which only permits vehicles to re-enter the highway, and stated that no turn signal was required for that, RR vol. 3, pp. 69-70 (pdf 71-72). The court denied appellant's motion to suppress in spite of the officer's mistake of law because "there was reasonable suspicion to stop the vehicle to investigate either a reckless driving or a driving while intoxicated charge based upon the evidence that's been admitted." RR vol. 3, p. 70, l. 12-16 (pdf 72). Findings of fact and conclusions of law were not requested.

## Standard of Review and Legal Authorities

An appellate court reviews a trial court's ruling on a suppression motion under an abuse of discretion standard. *Miller v. State*, 335 S.W.3d 847, 853-854 (Tex. App. – Austin 2011, no pet.). As summarized by the Court of Criminal Appeals:

> When the police conduct a warrantless search and seizure, the burden is on the State to show that the officer had reasonable suspicion to believe that an individual was violating the law. Reasonable suspicion exists if the officer has specific,

---

before the turn."

21

articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. [Citation omitted]. A reasonable-suspicion determination is made by considering the totality of the circumstances, giving almost total deference to the trial court's determination of historical facts and reviewing *de novo* the trial court's application of the law to facts not turning on credibility and demeanor. [Citation omitted]. Because the trial court did not make explicit findings of fact in this case, we review the evidence in a light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact supported by the record. [Citation omitted].

*Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007).

An anonymous tip from a 911 call alone is insufficient to establish probable cause or reasonable suspicion. *Davis v. State*, 989 S.W.2d 859, 863-865 (Tex. App. – Austin 1999, pet. ref'd). A stop based on facts supplied by a citizen-eyewitness, which are adequately corroborated by the arresting officer, does not run afoul of the Fourth Amendment. *Brother v. State*, 166 S.W.3d 255, 259 (Tex. Crim. App. 2005).

The facts stated in the 911 calls are not sufficiently corroborated by Officer Eberhardt because he did not observe Mr. Dumas driving 90 miles per hour when Eberhardt first observed Dumas' vehicle at Ben White and Interstate 35. In fact, appellant was driving 50 miles per hour in a 60 mile per hour zone. State's Ex. 4 does not show appellant exceeding the speed

22

limit or making unsafe lane changes, and while the vehicle is seen traveling to the left or right of the lane it is traveling in, Dumas' vehicle never drifts into another lane. Officer Eberhardt admitted that a vehicle failing to stay in the center of the lane, without drifting into another lane, was not a traffic offense. The officer was mistaken about appellant committing a traffic offense by not using his turn signal to exit the freeway at the Holly Street exit, because State's Ex. 4 shows the turn signal activated as the vehicle moves from the center lane to the right lane to exit. Eberhardt was additionally mistaken that appellant's failure to use a turn signal to re-enter the highway from a dedicated lane was a traffic offense, since a signal is not required because there was no lane change in the dedicated lane which only permitted vehicles to re-enter the freeway. In short, there was no reasonable suspicion that Mr. Dumas had committed any traffic offenses which would justify the traffic stop in the case at bar based on the officer's direct observations of appellant. Additionally, the information in the 911 calls were not sufficiently corroborated. Therefore, the trial court should have granted the motion to suppress, and all evidence obtained from the traffic stopped should have been excluded from the jury's consideration.

23

## Conclusion and Prayer for Relief

WHEREFORE, PREMISES CONSIDERED, appellant DELANE DUMAS respectfully prays that this court sustain one or both of the issues presented, reverse the judgment of conviction and sentence, and remand this case to the trial court for further proceedings.

Respectfully submitted,

/s/ *Gregory Sherwood*

GREGORY SHERWOOD
Attorney
P.O. Box 200613
Austin, Texas 78720-0613
(512) 484-9029
Email: gsherwood@mail.com
State Bar No. 18254600

Court-Appointed Attorney on
Appeal for Delane Dumas

## Certificate of Service

I hereby certify that a true copy of this document was served on March 9, 2015 by email upon Assistant County Attorney Giselle Horton, Travis County Attorney's Office, at the following email address: giselle.horton@traviscountytx.gov.

/s/ *Gregory Sherwood*

## Certification of Compliance

According to the WordPerfect program used to create this document, there are 5,685words in this brief, excluding the portions listed in Tex. R. App. P. 9.4(i)(1).

/s/ *Gregory Sherwood*

24