

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0795-11

**WILTON LARRON MAHAFFEY, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE TWELFTH COURT OF APPEALS
## HENDERSON COUNTY

ALCALA, J., delivered the opinion of the Court, in which MEYERS, JOHNSON, HERVEY, and COCHRAN, JJ., joined. MEYERS, J., filed a concurring opinion. KELLER, P.J., filed a dissenting opinion, in which PRICE and KEASLER, JJ., joined. WOMACK, J., dissented.

## O P I N I O N

In this second petition for discretionary review filed by appellant, Wilton Larron

Mahaffey, we determine that the court of appeals erred by holding that a driver must signal

a lane change when his lane merges with another lane.[1] *Mahaffey v. State*, No. 12-08-00430-

---

[1]     Appellant's issue asks, "Did the Court of Appeals incorrectly decide the sole issue, in direct conflict with the Texas Transportation Code and in direct conflict with the Court of Criminal Appeals, in ruling that it was reasonable for the officer to believe that Appellant's merge amounted

CR, 2010 Tex. App. LEXIS 8771 (Tex. App.—Tyler Nov. 3, 2010) (not designated for publication), *reh'g overruled*, *opinion withdrawn*, *substituted opinion* at No. 12-08-00430-CR, 2011 Tex. App. LEXIS 1507 (Tex. App.—Tyler Mar. 2, 2011) (not designated for publication). We reverse the judgment of the court of appeals.

## I. Background

### A. Facts

Appellant was traveling in the far right lane of State Highway 198, approaching the bridge dividing Gun Barrel City from Payne Springs.[2] When his lane ended, appellant was forced to merge left. Sergeant Billy Sparks stopped appellant for failing to signal the maneuver. He ultimately arrested appellant for driving while intoxicated (DWI). Appellant filed a motion to suppress, arguing that he was illegally stopped.

At the hearing on the motion to suppress, Sergeant Sparks testified that he was following appellant's car south on Highway 198, when both cars passed a "Lane Ends, Merge Left" sign: "Mr. Mahaffey's vehicle was traveling southbound in the outside lane, which would be the right-hand lane closest to the curb. As it approached the area just south of where he's at where that lane ends, he merged . . . to the left . . . without signaling that merge, the lane change." Sergeant Sparks said that the road, as it approaches the bridge over Cedar Creek Lake, goes from two lanes in each direction, to one in each direction. Sergeant

---

to a 'lane change' that required a signal under chapter 545 of the Texas Transportation Code?"

[2]     We recite the facts in relevant part as set forth in *Mahaffey v. State*, 316 S.W.3d 633, 634-36 (Tex. Crim. App. 2010) ("*Mahaffey I*").

Sparks turned on his overhead lights for a traffic stop based on the failure to signal a lane change as required by Texas Transportation Code Section 545.104(a). *See* TEX. TRANSP. CODE § 545.104(a) ("An operator shall use the signal authorized by Section 545.106 to indicate an intention to turn, change lanes, or start from a parked position."). After appellant had pulled his car to the side of the road, Sergeant Sparks approached appellant's car and immediately noticed appellant's "slurred speech" and "a strong odor of alcohol" coming from inside the car. Sergeant Sparks arrested appellant for DWI.

On cross-examination, Sergeant Sparks explained that appellant's car never crossed over any lane dividers or markers. Nonetheless, he still considered the road to be two lanes after the lines ended, although he was not sure if it would be considered two lanes under the law.[3] Sergeant Sparks agreed that appellant did exactly what the sign said: "Where he decided to switch over at was when he noticed he no longer was going to have a lane. . . . I interpret when he leaves from that right-hand lane, he's moving to the left lane regardless of how they merge together."

---

[3]     The colloquy between defense counsel and Sergeant Sparks was as follows:

Q:  Where are the two lanes? How do you separate those? How does the Department of Transportation separate those as two lanes?

A:  The Department of Transportation would probably separate them where the line stops.

Q:  [] Okay. So it's just your feeling that that's two lanes?

A:  Yes, sir.

Q:  Okay, and there is no law that you're aware of as to that effect, correct?

A:  Correct.

Defense counsel argued that the merge was not a lane change. He acknowledged that there was no Texas authority directly on point, but relied on *Trahan v. State*. 16 S.W.3d 146 (Tex. App.—Beaumont 2000, no pet.). In *Trahan*, the Beaumont court of appeals held that the failure to signal an exit from a freeway did not violate Section 545.104 when there was no evidence that Trahan "turned" or changed lanes to exit. *Id*. at 147. Defense counsel also distinguished *State v. Dewbre*, 991 P.2d 388 (Idaho Ct. App. 1999), an Idaho case factually similar to this one, in which the court held that a signal was required for a merge because the plain language of the Idaho statute explicitly required a signal for a movement right or left upon a highway.[4] The State noted that neither case was mandatory authority and both were of negligible persuasiveness because neither court ruled on "lane change" grounds. The State maintained that simple logic dictates that the merge was a lane change: When the defendant's lane ended, he was still traveling, but in a different lane.

The trial court denied the motion to suppress and signed agreed findings of fact and conclusions of law:

> On September 27, 2006, the Defendant was stopped for a traffic violation under Section 545.104 of the Texas Transportation Code. . . .
>
> The Court finds that the defendant did not cross over lane markings but rather failed to use a turn signal after the lane markings ended as the two lanes merged into one. The Court finds that this conduct is a traffic violation as contemplated by Section 545.104(a) and as such the traffic stop was justified.

---

[4]     Idaho Code § 49-808(1) provides, "No person shall turn a vehicle onto a highway or move a vehicle right or left upon a highway or merge onto or exit from a highway unless and until the movement can be made with reasonable safety nor without giving an appropriate signal." *Compare* TEX. TRANSP. CODE § 545.104(a) ("An operator shall use the signal authorized by Section 545.106 to indicate an intention to turn, change lanes, or start from a parked position.").

The Court finds that the sole valid basis for the traffic stop and detention of the Defendant was the violation of Section 545.104(a).[5]

The DWI was resolved with a plea bargain, and the trial court certified appellant's right to appeal the ruling on the motion to suppress.

### B.    Procedural History

On appellant's first direct appeal challenging the trial court's denial of his motion, the court of appeals affirmed the ruling, holding that appellant was required to signal because his "movement from right to left on a roadway amounts to a 'turn' under chapter 545." *Mahaffey v. State*, No. 12-08-00430-CR, 2009 Tex. App. LEXIS 6444, *11 (Tex. App.— Tyler Aug. 19, 2009) (not designated for publication). On his first petition for discretionary review, this Court addressed whether "a driver in Texas, who passes a traffic sign that states, 'Lane Ends, Merge Left,' and who merges left after the right lane ends—that is, where the broken dividing lines between the two lanes cease and the line dividing the right-hand lane from the shoulder angles inward—" is required to signal that maneuver under Texas Transportation Code Section 545.104(a). *Mahaffey v. State*, 316 S.W.3d 633, 634 (Tex. Crim. App. 2010) ("*Mahaffey I*"). We reversed the court of appeals, noting that the court's holding "leads to an absurd result: a requirement that a driver must signal any movement that is not a perfectly straight trajectory." *Mahaffey I*, 316 S.W.3d at 640. We instead concluded that

---

[5]    Although not expressly stated in its findings and conclusions, the trial court implicitly decided that the maneuver constituted a lane change under the statute. *See Mahaffey I*, 316 S.W.3d at 637.

"[u]nder the plain language of the Transportation Code, all movements right or left on the roadway must be made safely, but only some—turns, lane changes, or starts from a parked position—require a signal."[6] *Id*. at 643. We held that the merge was not a turn and remanded the case to the court of appeals to determine if the maneuver constituted a lane change under the statute so as to require a signal. *Id*.

On remand, the court of appeals affirmed the trial court's ruling. *Mahaffey*, No. 12-08-00430-CR, 2011 Tex. App. LEXIS 1507. Finding the term "change lanes" unambiguous,[7] the court held that the plain language of the statute encompassed appellant's conduct. *Id.* at *9 n.2, *12. It concluded,

> When the right-hand lane ended, Appellant continued driving in the other southbound lane, previously the lane to his left, that had not ended. To reach that remaining lane, Appellant had to make a leftward lateral maneuver as he departed that lane for another. Thus, it was reasonable for Sparks to conclude, based upon the plain language of section 545.104(a), that Appellant committed a traffic violation because he changed lanes and did not signal his intent to do so.[8]

---

[6] We also concluded that, "[t]o the degree that the statute might be considered ambiguous, we defer to the administrative determination by the Texas Department of Public Safety that the Transportation Code requires a signal for only one type of merge—that of entering a freeway. . . . Nowhere does the manual say that a driver must signal when a lane merges into another lane—save for the situation of when a driver *enters* a freeway." *Mahaffey I*, 316 S.W.3d at 641.

[7] The court also footnoted that, even if it had found the statute ambiguous, "neither the Handbook's failure to specifically outline a driver's responsibilities in the situation before nor its solitary reference in section 9-2 to a driver's responsibilities when one lane merges into another would result in a different outcome." *Mahaffey*, No. 12-08-00430-CR, 2011 Tex. App. LEXIS 1507 at *9 n.2.

[8] The court of appeals found that "Sparks believed Appellant's failure to signal an intent to turn prior to initiating his leftward merge was a violation of section 545.104(a)," and it identified the issue as "whether it was reasonable for Sparks to conclude that a traffic violation had been committed even though Appellant's vehicle did not cross any lane dividing lines." *Mahaffey*, No.

*Id*. at *12.

In his second petition for discretionary review, appellant complains that the court of appeals's holding conflicts with our holding in *Mahaffey I*. Appellant argues that his conduct did not constitute a lane change under the signal statute because, in merging left when his lane ended, he did not "change lanes," but rather "was simply following the 'direct course' of the road." *See* TEX. TRANSP. CODE § 545.104(a). He concludes that Sergeant Sparks's interpretation of the signal statute, which was premised on where the officer believed the lane ended, was an objectively unreasonable reading of the plain language of that provision. *See id*.

In response, the State contends that the ordinary meaning of "change" is "to make a shift from one to another" and that "lane" means "a strip of roadway for a single line of vehicles" and argues that appellant's lateral movement constituted shifting from one such

---

12-08-00430-CR, 2011 Tex. App. LEXIS 1507 at *7. Appellant has not challenged the court of appeals's decision by claiming that the stop was unlawful but permissible due to the officer's reasonable belief that a violation of law occurred. However, this Court has never addressed whether an officer's reasonable interpretation of the law, if ultimately mistaken, can serve as an objectively reasonable basis upon which to effectuate a stop.

In *Madden v. State*, we explained that the pertinent issue was "not whether appellant *was* speeding," but whether the officer "had a reasonable belief that he was speeding. Even police officers may be mistaken about an historical fact such as 'speeding,' as long as that mistake was not unreasonable." 242 S.W.3d 504, 509 n.7 (Tex. Crim. App. 2007). Unlike *Madden*, here there is no mistake about the historical facts. Rather, the matter before us is the application of the law to the facts. *See Garcia v. State*, 43 S.W.3d 527, 531 (Tex. Crim. App. 2001) (addressing sufficiency of facts to justify stop: "The question, then, is whether the child looking back several times is enough to establish reasonable suspicion for a seat belt violation."). As the Second Court of Appeals has explained, evidence that an officer "reasonably suspected that a defendant had violated a traffic law" is constitutionally insufficient because to hold otherwise "would transform the Fourth Amendment's objective standard into a subjective standard dependent on the whims of the police's 'understanding' of the law." *Fowler v. State* 266 S.W.3d 498, 504 (Tex. App.—Forth Worth 2008, pet. ref'd).

area of the roadway to another. It further contends that because the statute does not include the term "marked" to modify "lanes," the fact that appellant did not pass over lane markings is not outcome determinative.

## II.    Analysis

### A.    Standard of Review and Statutory-Construction Principles

Because the historical facts are not disputed, and because statutory construction is a question of law, we review the trial court's ruling on the motion to suppress *de novo*. *See Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999) (citing *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)); *Ramos v. State,* 303 S.W.3d 302, 306 (Tex. Crim. App. 2009).

When interpreting statutes, courts must "seek to effectuate the 'collective' intent or purpose of the legislators who enacted the legislation." *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991)). Toward that end, "we necessarily focus our attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of that text at the time of its enactment." *Id*. However, where application of a statute's plain language would lead to absurd consequences, or where "the language is not plain but rather ambiguous," a court may consider "such extratextual factors as executive or administrative interpretations of the statute or legislative history." *Id*. at 785-86. In this context, ambiguity exists when a statute may be understood by reasonably well-informed persons in two or more

different senses; conversely, a statute is unambiguous where it reasonably permits no more than one understanding. *See State v. Neesley*, 239 S.W.3d 780, 783 (Tex. Crim. App. 2007).

## B. Plain Language of Statute Unambiguous

In interpreting statutes, we presume that the Legislature intended for the entire statutory scheme to be effective. *See* TEX. GOV'T CODE § 311.021(2); *Murray v. State*, 302 S.W.3d 874, 879, 881 (Tex. Crim. App. 2009) (in construing statute, looked to other provisions within entire "statutory scheme" rather than merely the single, discrete provision at issue). Texas Transportation Code Section 541.302(7) provides, "In this subtitle,[9] 'Laned roadway' means a roadway that is divided into at least two clearly marked lanes for vehicular travel." TEX. TRANSP. CODE. § 541.302(7). The signal statute is contained within that subtitle and is, therefore, subject to that definition. *Id.* § 545.104(a).

Here, the record reveals that the highway on which appellant was driving was comprised of "clearly marked lanes for vehicular travel" and, therefore, was a "laned roadway" as described in the definitions statute. *See id.* § 541.302(7). It logically follows that once the clear markings on that highway terminated, so, too, did the corresponding "lane."[10] We disagree with the State's contention that the termination of a lane does not affect whether a driver changes lanes under the signal statute. *See id.* § 545.104(a). As a practical matter, "changing lanes" requires the existence of more than one lane: In order to

---

[9]    "Subtitle C. Rules of the Road." TEX. TRANSP. CODE § 541.302(7).

[10]    This is further evidenced by the sign reading, "Lane Ends, Merge Left," although the sign did not specify at what point the lane ended.

change lanes from Lane A to Lane B, Lane A must exist. At the time appellant began driving in Lane B, Lane A no longer existed; it had ended, and the roadway had merged into Lane B. At that point, as appellant explains, "he made the only decision possible: to follow the course of the roadway he was traveling on," all the while remaining in a single lane. Appellant did not change lanes. The two lanes became one. Because a signal is required only to indicate an "intention to turn, change lanes, or start from a parked position," no signal is required when two lanes become one. *See id.* § 545.104(a). As we concluded in *Mahaffey I*, the language of the signal statute "is plain, and unambiguous, and does not lead to an absurd result" in this case. *Mahaffey I*, 316 S.W.3d at 638 (citing TEX. TRANSP. CODE § 545.104(a)).

The State suggests that focusing on the absence of lane markings yields absurd results, such as exempting from the signal statute lane changes made within intersections of roadways, which do not contain lane markings. "[W]here application of a statute's plain language would lead to absurd consequences that the Legislature could not *possibly* have intended, we should not apply the language literally." *Boykin*, 818 S.W.2d at 785. Unlike this case, in which the lane markings had ended, plainly denoting the termination of the lane, lane markings do not terminate at intersections of laned roadways; rather, they are briefly suspended immediately before the intersection and reappear immediately after the intersection. We disagree that the absence of lane markings at an intersection creates the

same circumstances as the absence of markings when two lanes become one and conclude that a plain reading of the signal statute does not yield an absurd result.[11]

In support of its conclusion that the cessation of lane markings in this case was of no legal consequence, the court of appeals cites *Turner v. State,* 261 S.W.3d 129, 133 (Tex. App.—San Antonio 2008, no pet.), as "holding that [the] record supported [the] trial court's findings that the appellant did not signal intent to change lanes even though the appellant's vehicle did not cross lane dividing lines." *Mahaffey*, No. 12-08-00430-CR, 2011 Tex. App. LEXIS 1507 at *12. In *Turner*, the appellant was stopped for failing to signal a right-hand turn from one road onto another at an intersection. *Turner,* 261 S.W.3d at 131-32. The lane from which he turned widened as it approached the intersection and was not exclusively used for right turns; instead, a car traveling on that lane could continue traveling straight through the intersection. *Id*. at 132. The court held that, because he was not turning from a designated turn-only lane, the appellant was required to signal the turn under the signal statute. *Id*. at 133 (citing TEX. TRANSP. CODE § 545.104(a)). But the court further concluded that even if that part of the roadway was one from which only a right turn could be made, appellant would

---

[11]     We note that not every crossing of lane markings in a laned roadway will constitute a lane change under the signal statute. *See Hernandez v. State,* 983 S.W.2d 867 (Tex. App.—Austin 1998, pet. ref'd) (single, slight drift across markings not a lane change); *Fowler*, 266 S.W.3d 498 (same). Our holding is limited to circumstances involving "laned roadways" and does not suggest that a vehicle, in all circumstances, must cross lane markings in order to effectuate a lane change under the statute. For roadways on which lanes are not clearly marked—for example, unpaved country roads or freshly refurbished city streets—it may be more difficult to determine the existence and boundaries of "lanes" for purposes of the signal statute. *See* TEX. TRANSP. CODE § 545.104(a).

still have been "required to signal to indicate his intention to move into that portion of the roadway or 'lane.'" *Id*.

*Turner* is distinguishable. Assuming, as did the *Turner* court, that the portion of the roadway from which Turner turned did, in fact, permit only right turns (while the other portion continued straight), a signal would have been required because the act of turning from that road onto another would constitute a "turn" under the statute, despite that such a turn would technically be the driver's only option. *See* TEX. TRANSP. CODE § 545.104(a); *Mahaffey I*, 316 S.W.3d at 637. We conclude that the court of appeals's reliance on *Turner* was misplaced.

### III. Conclusion

We hold that Sergeant Sparks failed to articulate specific facts that support a reasonable suspicion that appellant had violated Texas Transportation Code Section 545.104(a). *See* TEX. TRANSP. CODE § 545.104(a). We, therefore, hold that there was no reasonable suspicion for the initial stop and that the trial court erred by failing to suppress the evidence obtained as a result of the stop. We reverse the judgment of the court of appeals and remand for proceedings consistent with this opinion.

Delivered: April 25, 2012

Publish