**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-17-00430-CR**
_____

**ALBERT WAYNE HEBERT III, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

_____

**On Appeal from the County Court at Law No. 3**
**Jefferson County, Texas**
**Trial Cause No. 313261**
_____

**MEMORANDUM OPINION**

In 2016, the State charged Appellant Albert Wayne Hebert III with Driving

While Intoxicated-2nd Offense. Hebert filed a motion to suppress in which he argued

that his stop and detention were without probable cause or reasonable suspicion and

all evidence subsequently obtained—including a blood draw—should be suppressed

as products of an illegal search. The trial court carried the motion to suppress under

consideration during the trial testimony presented by the State. After the State rested,

1

Hebert again moved to suppress the evidence and he made a motion for an instructed verdict. The court denied both motions. The defendant elected to testify and then the defense rested, and the parties presented closing arguments to the jury. The jury found Hebert guilty of driving while intoxicated-2nd offense and assessed a fine of $4000. Hebert raises two issues on appeal: the trial court erred in denying his motion to suppress, and the trial court erred in admitting evidence of the drug phencyclidine (PCP) in the blood sample taken from him. The State raises a cross-issue that the sentence imposed was illegal. We affirm in part and reverse and remand in part.

<u>Evidence</u>

<u>Testimony of Officer Carson Burrell</u>

Officer Burrell, a patrol officer with the Beaumont Police Department, testified that in the early afternoon of April 2, 2016, he observed a white Camaro drift from the left lane to the right lane and the officer had to stop and swerve to avoid a collision. Burrell then stopped the vehicle and spoke with the driver who was identified as Albert Wayne Hebert III. While talking with Hebert, Burrell noticed "a very blank stare" on Hebert's face and Hebert was "very slow and unresponsive." Burrell described Hebert's speech as "[s]lurred and slow." After checking for warrants, Burrell asked Hebert to step out of his vehicle, and Burrell immediately smelled a chemical odor that Burrell knew to be PCP. Burrell explained

2

that he then put handcuffs on Hebert for safety because someone on PCP can be highly aggressive. Burrell testified that he asked Hebert if he had taken PCP, and Hebert denied it.

Officer Burrell then decided to give Hebert a standardized field sobriety test. Burrell testified that one test is the horizontal gaze nystagmus (HGN), which checks for involuntary jerky eye movements caused by a foreign or controlled substance or alcohol in the body. Burrell agreed that he gave Hebert three HGN tests, and Burrell observed signs of intoxication or nystagmus in all three tests. Burrell testified that when he gave Hebert the "walk and turn test," Hebert used his arms for balance, which can be a sign of intoxication. According to Burrell, Hebert refused to complete the test, and Burrell then arrested Hebert. A video-recording taken from Burrell's dash cam was admitted as Exhibit B and published to the jury, and Burrell agreed it was a fair and accurate depiction of what happened that day.

Burrell testified that he informed Hebert of his rights, and Hebert refused to give a blood specimen. According to Burrell, he then sought a warrant for a blood draw and filled out a probable cause affidavit and obtained a warrant. In his affidavit for a search warrant for a blood draw, admitted at trial as Court's Exhibit 1, Officer Burrell alleged that "Albert was driving north bound on 11th St. and failed to maintain a single lane, almost colliding with the front of my marked Beaumont

3

Police Patrol Tahoe." Burrell transported Hebert to Baptist Hospital for a blood draw, and Burrell and his partner sealed the sample and submitted it to the police evidence room. Burrell agreed that his initial report of the incident did not mention PCP but that another report he made of the incident did mention PCP.

According to Burrell, when Hebert was driving, he weaved into Burrell's lane and that was the reason for the initial stop. Burrell agreed that he arrested Hebert for failing to maintain a single lane and that another statute requires drivers to maintain a sure and clear distance.

Testimony of Sarah Martin

Sarah Martin, a forensic scientist with the Texas Department of Public Safety Crime Laboratory in Austin, testified that she recognized Exhibit C as the blood sample she received and analyzed. According to Martin, she identified the presence of PCP in the blood. Exhibit D was admitted into evidence, which Martin agreed was a copy of the lab report that she produced for this case.

Testimony of Albert Hebert

Albert Hebert denied that PCP was in his system when he was stopped, but he admitted that it had been in his system "over a week[]" or "possibly two weeks[]" or "several weeks[]" before this date. According to Hebert, before the traffic stop, there was enough distance between his vehicle and Burrell's patrol vehicle so that he could

4

have turned into the other lane safely. Hebert testified that there was nothing wrong with his eyes at that time and he told Officer Burrell that it was possible he would not pass a field sobriety test because of his prior injuries, including having twenty screws and a metal plate in his knee and ankle. Hebert denied that Officer Burrell ever asked him for a blood test. Hebert agreed that he was an "occasional user[]" of PCP. Hebert denied that he smelled like PCP or that the officer smelled PCP on him.

Applicable Law

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We review the trial court's factual findings for an abuse of discretion but review the trial court's application of the law to the facts de novo. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013).

In considering a motion to suppress, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony, and a trial court may choose to believe or to disbelieve all or any part of a witness's testimony. *Valtierra*, 310 S.W.3d at 447; *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007) (quoting *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999)); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). When reviewing a trial court's ruling, the appellate court does not engage in its own factual review.

*St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). We give almost total deference to the trial court's determination of historical facts, "especially if those are based on an assessment of credibility and demeanor." *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). We give the same deference to the trial court's conclusions on mixed questions of law and fact that turn on credibility or demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). We review purely legal questions de novo as well as mixed questions of law and fact that do not turn on credibility and demeanor. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011); *Crain*, 315 S.W.3d at 48. We also review de novo "whether the totality of [the] circumstances is sufficient to support an officer's reasonable suspicion of criminal activity." *Crain*, 315 S.W.3d at 48-49.

When, as here, the trial court fails to make explicit findings, we infer a fact finding to support the trial court's ruling when the evidence supports the implied finding. *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007). We afford the prevailing party the strongest legitimate view of the evidence, and all reasonable inferences that may be drawn from that evidence. *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014); *Arguellez v. State*, 409

S.W.3d 657, 662-63 (Tex. Crim. App. 2013); *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

Traffic stops require an officer to have a reasonable suspicion that the person detained is, has been, or will soon engage in criminal activity. *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015); *Crockett v. State*, 803 S.W.2d 308, 311 (Tex. Crim. App. 1991). The standard is whether, based on facts articulated by the officer and the totality of the circumstances, an objectively reasonable officer would have developed suspicion that an offense was in progress or had occurred. *See Jaganathan*, 479 S.W.3d at 247; *Martinez v. State*, 500 S.W.3d 456, 465 (Tex. App.—Beaumont 2016, pet. ref'd) (citing *Ford v. State*, 158 S.W.3d 488, 492-93 (Tex. Crim. App. 2005)).

<u>Analysis</u>

Hebert's appellate brief argues that he committed no traffic offense and Officer Burrell had no authority to stop him for any reason. According to Hebert, Burrell's stop of Hebert was "based entirely upon a mischaracterization of the facts and the misconception that a violation of the Texas traffic law had occurred." Hebert argues that although Burrell testified that Hebert almost caused a collision, the video made from the patrol vehicle's dash cam revealed that no unsafe action by Hebert occurred. Hebert further argues that because Burrell did not articulate specific facts

to support a reasonable suspicion that Hebert committed a traffic offense, the trial court erred by failing to suppress the evidence obtained as a result of the traffic stop, citing *Mahaffey v. State*, 364 S.W.3d 908, 914-15 (Tex. Crim. App. 2012).

The question is whether a reasonable officer based on the totality of the circumstances would have believed that an offense occurred or was in progress. *See Jaganathan*, 479 S.W.3d at 247. Officer Burrell testified that he observed Hebert drift into his lane and that Burrell had to swerve to avoid a collision. He further testified on cross-examination that Appellant's vehicle crossed into his lane. This uncontroverted testimony supports Officer Burrell's concern that Appellant may collide with another vehicle on the road. The video made from the patrol vehicle's dash cam was admitted into evidence and published to the jury, and when viewed in a light most favorable to the verdict, the jury could have concluded that it depicts Hebert's vehicle veer toward Burrell's lane of traffic. Therefore, a reasonable officer based upon the totality of the circumstances could have reasonably concluded that Hebert was driving in an unsafe manner. *See* Tex. Transp. Code Ann. § 545.060(a) (West 2011).

Affording the prevailing party the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence, the evidence supports the trial court's implied finding that a reasonable officer, based on the

8

totality of the circumstances, would have believed that an offense had occurred or was in progress. *See Duran*, 396 S.W.3d at 571; *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001); *Martinez*, 500 S.W.3d at 465. Viewing the evidence in the light most favorable to the trial court's ruling and deferring to the trial court on credibility determinations and determinations of historical facts, we cannot say that the trial court abused its discretion by denying the motion to suppress. *See Crain*, 315 S.W.3d at 48.

We conclude that the record supports an inference, based on the totality of the circumstances, that a reasonable officer would have believed that an offense had occurred or may occur, and Hebert has not shown either the stop or the warrant to be invalid. We also conclude that the blood sample was obtained with a valid warrant. *See State v. Garcia*, 569 S.W.3d 142, 148 (Tex. Crim. App. 2018) ("'[W]here police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so.'") (quoting *Missouri v. McNeely*, 569 U.S. 141, 152 (2013)). We overrule both of Hebert's issues.

<u>Cross-Issue About the Sentence</u>

In a cross-issue, the State argues that the sentence imposed by the court is illegal because Hebert was only assessed a fine and was not sentenced to

9

confinement.[1] The State argues that because Hebert was not sentenced to confinement, as required by statute, the sentence is illegal. *See Mizell v. State*, 119 S.W.3d 804, 805-06 (Tex. Crim. App. 2003) (en banc) (sentences below the statutory minimum are illegal and void).

At trial, Hebert pleaded "true" to a prior DWI conviction. An offense under section 49.04 of the Penal Code (Driving While Intoxicated) "is a Class A misdemeanor, with a minimum term of confinement of 30 days, if it is shown on the trial of the offense that the person has previously been convicted one time of an offense relating to the operating of a motor vehicle while intoxicated[.]" *See* Tex. Penal Code Ann. §§ 49.04, 49.09(a) (West Supp. 2018).[2] "When a trial court assesses punishment, it 'must always be within the minimum and maximum fixed by law; if the punishment assessed is less than the minimum provided by law, the judgment of conviction is rendered a nullity.'" *State v. Cooley*, 401 S.W.3d 748, 750 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (citing *Mapes v. State*, 187 S.W.3d 655, 658 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd)). Because Hebert's

---

[1] "[O]nce a convicted defendant files a timely notice of appeal, the appellate courts have jurisdiction to address any pertinent 'cross-appeal' or 'rebuttal' issues raised by the State." *Pfeiffer v. State*, 363 S.W.3d 594, 604 (Tex. Crim. App. 2012).

[2] We cite the current versions of statutes because amendments after Hebert's offense do not affect our disposition.

sentence was below the statutory minimum outlined in section 49.04, the sentence Hebert received is a nullity.

This Court has no authority to reform an illegal or void sentence by adding a punishment of any amount, "even in the interest of judicial economy and fairness or even if the addition is de minimis." *Ibarra v. State*, 177 S.W.3d 282, 284 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing *Scott v. State*, 988 S.W.2d 947, 948 (Tex. App.—Houston [1st Dist.] 1999, no pet.); *Reed v. State*, 795 S.W.2d 19, 19-21 (Tex. App.—Houston [1st Dist.] 1990, no pet.)). The only remedy is a new punishment hearing. *See* Tex. Code Crim. Proc. Ann. art. 44.29(b) (West 2018); *Ibarra*, 177 S.W.3d at 284; *Scott*, 988 S.W.2d at 948; *Young v. State*, 922 S.W.2d 676, 678 (Tex. App.—Beaumont 1996, pet. ref'd). We reverse the judgment only as to the sentence and remand the cause to the trial court for a new punishment hearing. *See* Tex. Code Crim. Proc. Ann. art. 44.29(b).

AFFIRMED IN PART; REVERSED AND REMANDED ON PUNISHMENT ONLY.

_____
LEANNE JOHNSON
Justice

11

Submitted on August 8, 2019
Opinion Delivered September 25, 2019
Do Not Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.