

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-25-00049-CR

BENJAMIN FRED CLARK, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 115th District Court
Upshur County, Texas
Trial Court No. 19854

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

# MEMORANDUM OPINION

An Upshur County jury convicted Benjamin Fred Clark of possession of a controlled substance, methamphetamine, in an amount of one gram or more but less than four grams. *See* TEX. HEALTH & SAFETY CODE ANN. 481.115(c) (Supp.). Clark pled true to two enhancement paragraphs, and the jury assessed punishment at ninety-nine years' imprisonment after finding two habitual offender enhancements true. *See* TEX. HEALTH & SAFETY CODE ANN. 481.115(c); TEX. PENAL CODE ANN. § 12.42(d) (Supp.).

On appeal, Clark complains that (1) the trial court erred by denying his motion to suppress the traffic stop, (2) this Court should revisit the pretextual doctrine, (3) no probable cause was present to conduct the open-air dog sniff, (4) the trial court erred by including a jury instruction statement identifying methamphetamine as a controlled substance, (5) the trial court improperly refused his requested probable cause instruction, and (6) cumulative error. We affirm the trial court's judgment.

## I.      Applicable Facts

In May 2023, Justin Nustad, a deputy with the Upshur County Sheriff's Office and part of the Upshur County Special Investigations Unit, observed a white Ford Ranger pickup truck at a location that was under surveillance for narcotics activity. Later that same day, Nustad saw what he believed to be the same truck on Highway 259. Nustad turned around to follow the truck. Nustad admitted that his purpose for doing so was to "obtain[] probable cause for a traffic stop." He saw the truck turn onto Highway 154, then left onto Sego Lily Road. The truck then

2

turned right onto Spider Lily Road without using its turn signal. The State introduced the following map into evidence.



Both parties agreed that the exchange spans at least ninety-six feet between Highway 154 and the point where Sego Lily Road and Spider Lily Road diverge.

On the morning of trial, the parties, by agreement, offered additional evidence regarding the motion to suppress. For the purpose of supplementing the record on the motion to suppress, the trial court admitted a video of the intersection offered by the State and four photographs of the intersection offered by Clark. Below is a screenshot from the video offered by the State, with

a view of Sego Lily Road on the left, and Spider Lily Road on the right, as seen after turning off of Highway 154.



After initiating the traffic stop, Nustad approached the truck. Clark provided a shopping card of some sort instead of a driver's license, appeared nervous, and failed to produce current insurance or registration. Nustad requested consent to search the vehicle and Clark refused. After Clark declined consent to search, Nustad deployed his certified K-9 to perform a drug search of Clark's vehicle. Nustad's K-9 alerted to Clark's truck. Nustad then conducted a warrantless search that uncovered 1.14 grams of methamphetamine in a hidden dashboard compartment.

The search of Clark's truck took a significant amount of time because Nustad expected contraband to be hidden. Nustad discovered a dashboard knob that he could tell had been

4

tampered with. Upon removal, Nustad uncovered a baggie containing suspected methamphetamine. A further search of the back seat uncovered a hide-a-key box containing a second baggie of methamphetamine, along with two suspected baggies of mushrooms and a bag of penis-shaped candies. Clark said that he got the candy from a vape store.

Micaela Steward, a forensic scientist with the Texas Department of Public Safety Crime Laboratory in Tyler, testified that the substance was methamphetamine, weighing a combined weight of 1.14 grams. The jury returned a guilty verdict.

During the punishment phase, Clark pled true to the enhancement paragraphs, and the jury heard evidence of Clark's sixteen prior convictions. The jury assessed ninety-nine years' imprisonment.

## II.    Motion to Suppress

Nustad testified that he stopped Clark for failing to use a turn signal. The motion to suppress focused on whether Clark was required to use a turn signal. At the pre-trial hearing on the motion to suppress, Clark argued that because it is "essentially a straight shot" from Sego Lily Road to Spider Lily Road, Clark was not required to use a turn signal when turning onto Spider Lily Road. At the pre-trial hearing on the motion to suppress, Nustad testified that Clark failed to signal before turning right onto Spider Lily Road. The trial court denied Clark's pre-trial motion to suppress. In his first issue, Clark argues that the trial court erred in denying his motion to suppress. We find no abuse of discretion in the trial court's decision.

## A. Standard of Review

"An appellate court reviews a trial court's ruling on a motion to suppress for an abuse of discretion." *State v. McGuire*, 689 S.W.3d 596, 601 (Tex. Crim. App.), *cert. denied*, 145 S. Ct. 443 (2024) (citing *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010)). "Almost complete deference is given to the [trial] court's determination of historical facts and its rulings on the application of law to those questions of fact." *Id.* (citing *Crain*, 315 S.W.3d at 48). "The same deference is afforded to the trial court in deciding mixed questions of law and fact that are based on an assessment of credibility and demeanor." *Id.* at 601–02 (citing *Crain*, 315 S.W.3d at 48). "For mixed questions of law and fact that do not involve an evaluation of credibility and demeanor, however, we conduct a de novo review." *Id.* at 602 (citing *Crain*, 315 S.W.3d at 48). "If the trial court's ruling is correct on any theory of law applicable to the case and reasonably supported by the evidence, the ruling will be upheld." *Id.*; *see Armstrong v. State*, 713 S.W.3d 893, 902 (Tex. Crim. App. 2025) ("We sustain the trial court's decision on the motion if it is correct under any applicable theory of law.").

"A warrantless traffic stop is a Fourth Amendment seizure that is analogous to temporary detention; thus, it must be justified by reasonable suspicion." *State v. Hardin*, 664 S.W.3d 867, 872 (Tex. Crim. App. 2022). "If an officer has a reasonable suspicion that a person has committed a traffic violation, the officer may conduct a traffic stop." *Id.* "Reasonable suspicion exists if the officer has specific articulable facts that, combined with rational inferences from those facts, would lead the officer to reasonably conclude the person is, has been, or soon will be

6

engaged in criminal activity." *Id.* "When making a determination of reasonable suspicion, we consider the totality of the circumstances." *Id.*

The reasonable suspicion inquiry is not a test of whether there was, in fact, a traffic violation. *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015) ("The question in this case is not whether appellant was guilty of the traffic offense but whether the trooper had a reasonable suspicion that she was."). Reasonable suspicion allows for reasonable mistakes: "[A] mistake about the facts, *if* reasonable, will not vitiate an officer's actions in hindsight so long as his actions were lawful under the facts as he reasonably, albeit mistakenly, perceived them to be." *Robinson v. State*, 377 S.W.3d 712, 720–21 (Tex. Crim. App. 2012). However, "[t]he Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes—whether of fact or of law—must be *objectively* reasonable. We do not examine the subjective understanding of the particular officer involved." *Daniel v. State*, 683 S.W.3d 777, 783 (Tex. Crim. App. 2024) (quoting *Heien v. North Carolina*, 574 U.S. 54, 66 (2014)). In *Ford v. State*, the Texas Court of Criminal Appeals held that "law enforcement training or experience may factor into a reasonable-suspicion analysis." *Ford v. State*, 158 S.W.3d 488, 494 (Tex. Crim. App. 2005) (citing *United States v. Cortez*, 449 U.S. 411, 419 (1981)). However, "reliance on this special training is insufficient to establish reasonable suspicion absent objective factual support." *Id.* (citing *Cortez*, 449 U.S. at 419). Consequently, the court rejected an officer's testimony that a vehicle was following too closely when there was no objective testimony to support the officer's judgment. *Id.* ("The State failed to elicit any testimony pertinent to what facts would allow [the officer] to objectively determine Ford was violating a traffic law in support of his judgment.");

7

*see State v. Hneidy*, 510 S.W.3d 458, 463 (Tex. App.—San Antonio 2013, pet. ref'd) ("[T]he question is not whether, in hindsight, Appellee actually failed to continuously signal for 100 feet before turning; rather, it is whether an officer could have reasonably concluded based on specific, articulable facts and rational inferences from those facts that Appellee failed to continuously signal for 100 feet.").

A reviewing court determines whether a law enforcement officer's "reasonable suspicion of criminal activity" is supported by the totality of the circumstances using a bifurcated standard of review. *State v. Cortez*, 543 S.W.3d 198, 203 (Tex. Crim. App. 2018). "First, we 'give "almost total deference to the trial court's determination of the historical facts that the record supports," and second, we review *de novo* the trial court's application of the law to facts, which do not turn on credibility and demeanor.'" *Id.* at 203–04 (quoting *Abney v. State*, 394 S.W.3d 542, 547 (Tex. Crim. App. 2013)). "We review *de novo* whether the totality of circumstances is sufficient to support an officer's reasonable suspicion of criminal activity." *Crain*, 315 S.W.3d at 48–49. "When a police officer stops a defendant without a warrant, the State has the burden of proving the reasonableness of the stop at a suppression hearing." *Cortez*, 543 S.W.3d at 204 (citing *Russell v. State*, 717 S.W.2d 7, 9–10 (Tex. Crim. App. 1986)). Here, Clark was arrested without a warrant, so the State had the burden to prove that the initial traffic stop was justified by reasonable suspicion. *See id.*; *Ford*, 158 S.W.3d at 492.

**B.  Applicable Law**

Section 545.104 of the Texas Transportation Code defines when a turn signal is required:

(a)  An operator shall use the signal authorized by Section 545.106 to indicate an intention to turn, change lanes, or start from a parked position.

(b)     An operator intending to turn a vehicle right or left shall signal continuously for not less than the last 100 feet of movement of the vehicle before the turn.

TEX. TRANSP. CODE ANN. § 545.104.

There are two *Mahaffey v. State* decisions of the Court of Criminal Appeals that address the definition of "turn" under Section 545.104. *Mahaffey v. State* (*Mahaffey 2010*), 316 S.W.3d 633, 634 (Tex. Crim. App. 2010); *Mahaffey v. State* (*Mahaffey 2012*), 364 S.W.3d 908, 914 (Tex. Crim. App. 2012). Both cases deal with the same maneuver, by the same defendant, on the same road.

### 1.     *Mahaffey 2010* **Expressly Addressed "[T]urn"**

In 2010, the Court of Criminal Appeals considered the case of a defendant who was arrested for driving while intoxicated based on an investigation following a traffic stop for failing to use a turn signal on State Highway 198 in Henderson County. *Mahaffey 2010*, 316 S.W.3d at 634. The defendant, Mahaffey, moved to suppress, asserting that the stop was improper because there was no reasonable suspicion of a traffic violation to support the initiation of the stop. *Id.* Southbound State Highway 198 had two lanes of travel but narrowed to a single lane, the left, which then went across the Cedar Creek Lake bridge. *Id.* Mahaffey was traveling in the right lane. *Id.* He passed a "Merge Left" sign and then moved into the left lane. *Id.* At the point where he merged, there was no longer a stripe dividing the two lanes. *Id.* When he moved into the sole remaining lane, Mahaffey did not use his turn signal. *Id.*

In doing so, did Mahaffey "turn" or "change lanes" under Section 545.104? *See* TEX. TRANSP. CODE ANN. § 545.104. By the time the case got to the Court of Criminal Appeals, the

State switched from the theory it had used in the trial court, that Mahaffey had "change[d] lanes," and focused on whether Mahaffey had "turn[ed]." *Mahaffey 2010*, 316 S.W.3d at 634, 637. The Court of Criminal Appeals held that the meaning of "turn" is "plain, and unambiguous, and does not lead to an absurd result." *Id.* at 638. In so concluding, the court determined there is no relevant *statutory* definition of "turn." *Id.* at 638–39. The court used the plain meaning of "turn," which the court said is "to change directions—to turn the vehicle from a direct course of the roadway." *Id.* at 639. The court made several explanatory statements. *Id.* "You either turn left, or you turn right out of the direct course or flow of normal traffic." *Id.* "Thus, if the road itself makes sharp switchback turns going up the mountain, the driver need not signal these 'turns' because he is simply following the 'direct course' of the road and of the traffic on that winding road." *Id.* "It is when he turns right or left out of the 'direct course' of the road that he must signal his intention." *Id.* Accordingly, the court held that Mahaffey was not required to use his turn signal since what he did was not a "turn" within the plain meaning of that word as found in Section 545.104. *Id.* at 643.[1]

Having held that "turn" is unambiguous, the court nonetheless addressed the State's position that "turn" is ambiguous. *Id.* at 640–41. The court noted that the Texas Driver's Handbook contains numerous examples of when a turn signal is required, but what Mahaffey did is not among those examples: "To the degree that the statute might be considered ambiguous, we defer to the administrative determination by the Texas Department of Public Safety that the

---

[1]When discussing *Mahaffey 2010* and *Mahaffey 2012*, we do not extend the holdings of those cases beyond the maneuver other than the one made by Mahaffey himself. *See Hardin*, 664 S.W.3d at 878 ("Each case involving the review of traffic stop depends upon the unique circumstances of that offense, so it is inappropriate to suggest how this Court would apply this statute to another and obviously incomplete set of facts.").

Transportation Code requires a signal for only one type of merge—that of entering a freeway." *Id.* at 641.

*Mahaffey 2010*, however, did not address the statutory term "lane change" as found in Section 545.104(a). *Id.* at 643 ("We did not grant review of that question."). Thus, *Mahaffey 2010*'s remand amounted to an instruction to the intermediate court of appeals to consider the meaning of the term "lane change" in Section 545.104(a). *See id.*; *Mahaffey 2012*, 364 S.W.3d at 911 ("We held that the merge was not a turn and remanded the case to the court of appeals to determine if the maneuver constituted a lane change under the statute so as to require a signal.").

### 2. *Mahaffey 2012* Spoke to "[T]urn" When Addressing "[C]hange [L]anes"

In 2012, the Court of Criminal Appeals addressed the meaning of "change lanes" in Section 545.104(a) regarding the same stop on State Highway 198 at the Cedar Creek Lake bridge. *Mahaffey 2012*, 364 S.W.3d at 909–11. Regarding that statutory term, the court held, "As a practical matter, 'changing lanes' requires the existence of more than one lane: In order to change lanes from Lane A to Lane B, Lane A must exist. . . . [N]o signal is required when two lanes become one." *Id.* at 913.[2]

In addressing the arguments of the parties regarding what constitutes a lane change, the court spoke to intersections and provided further comments on the meaning of a "turn." *Id.* at 914. On remand, the intermediate court of appeals had reasoned that drivers are required to use turn signals at intersections even though there are no lane markers in the middle of intersections,

---

[2]When discussing *Mahaffey 2010* and *Mahaffey 2012*, we do not comment on other drivers on other roads making other maneuvers but instead recount those holdings regarding the maneuver made by Mahaffey himself.

and therefore, drivers should likewise be required to use turn signals after the lane markers have ended between lanes that have merged. *Id.* (citing *Mahaffey v. State*, No. 12-08-00430-CR, 2011 WL 721505, at * 3 (Tex. App.—Tyler Mar. 2, 2011) (not designated for publication), *rev'd on other grounds by Mahaffey 2012*). The Court of Criminal Appeals rejected that analogy. *Id.* Whereas the cessation of lane markings of merged lanes "denot[es] the termination of the lane," the same is not true at intersections. *Id.* "[L]ane markings do not terminate at intersections of laned roadways; rather, they are briefly suspended immediately before the intersection and reappear immediately after the intersection." *Id.* For this reason, the "suspen[sion]" of lane markings at intersections does not make intersections a turn-signal-free zone. *See id.* For example, the move from a right-hand turn only lane into the right lane of an intersecting road requires a turn signal because it is a "turn" within the meaning of Section 545.104(a). *Id.*

### C. Application

We defer to the trial court's factual findings and, consequently, find no abuse of discretion. *See McGuire*, 689 S.W.3d at 601 ("Almost complete deference is given to the [trial] court's determination of historical facts and its rulings on the application of law to those questions of fact." (citing *Crain*, 315 S.W.3d at 48)). Clark's motion to suppress did not ask the trial court to construe Section 545.104. Nor did Clark request a statutory construction at the hearing on his motion to suppress. Even if a construction of "turn" had been asked for, none was needed; the Court of Criminal Appeals has held that "turn," as used in Section 545.104, should be given its plain and ordinary meaning. *Mahaffey 2010*, 316 S.W.3d at 639.

12

Clark's motion to suppress hinged in significant part on the credibility and demeanor of Nustad. Although Nustad did not parrot the language of *Mahaffey 2010* (e.g., "direct course or flow of normal traffic"), *see id.*, he did testify to his familiarity with the roads and to how Spider Lily Road turns off of Sego Lily Road by stating, "I've been down there a lot. I mean, it's not a [ninety degree turn] for sure, but it's definitely -- you have to turn." Nustad testified that Sego Lily Road runs north and south, and that Spider Lily Road turns off of Sego Lily Road. Nustad testified that Spider Lily Road itself does not cross Sego Lily Road; it ends at Sego Lily, and it does not continue to meet State Highway 154. Nustad testified that he did not measure the distance from State Highway 154 to Spider Lily Road but agreed that the direct distance is approximately ninety-six feet.[3]

Based on Nustad's testimony, along with the photographic and videographic evidence, the trial court did not abuse its discretion in determining that the State met its burden to prove that Nustad had reasonable suspicion for a traffic stop. Nustad had "reasonable suspicion based on 'specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that'" Clark had committed a traffic violation because Clark did not use a turn signal when he turned from Sego Lily Road, the direct course, onto a different road (Spider Lily Road). *Burleson v. State*, No. 06-19-00258-CR, 2020 WL 1896690,

---

[3]During Clark's motion to suppress hearing, he argued that he need not have used a right turn signal because Spider Lily Road had effectively been extended to State Highway 154 by drivers cutting diagonally across Sego Lily Road via a "cut through" next to the intersection of Sego Lily Road and State Highway 154. On appeal, Clark argues that it was "impossible" for Clark to use his turn signal because the distance between State Highway 154 and Spider Lily Road was less than 100 feet. "[A] particular argument relied upon on appeal must have been presented to the trial court." *Clarke v. State*, 270 S.W.3d 573, 582 (Tex. Crim. App. 2008). Clark did not make this argument to the trial court and does not cite any authority that legal impossibility is applicable in this scenario. Therefore, Clark waived these arguments. *See* TEX. R. APP. P. 33.1(a)(1)(A), 38.1(i).

at *5 (Tex. App.—Texarkana Apr. 17, 2020, pet. ref'd) (mem. op., not designated for publication) (quoting *Jaganathan*, 479 S.W.3d at 247); *see* TEX. TRANSP. CODE ANN. § 545.104(b).

We overrule the first point of error.

## III. Pretext

In Clark's second issue, he requests that we revisit the pretextual doctrine. *See Crittenden v. State*, 899 S.W.2d 668 (Tex. Crim. App. 1995).

> [A] complaint is not preserved for appeal unless it was made to the trial court "by a timely request, objection or motion" that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context."

*Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009) (quoting TEX. R. APP. P. 33.1); *see also* TEX. R. EVID. 103. "[T]he point of error on appeal must comport with the objection made at trial." *Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014); *see Clarke*, 270 S.W.3d at 582 ("[A] particular argument relied upon on appeal must have been presented to the trial court."). Here, Clark did not argue this issue to the trial court.

Clark's second point of error is overruled.

## IV. Open Air K-9 Search

In Clark's third point of error, he argues that Nustad did not have probable cause to conduct an open-air sniff. Clark did not file a motion to suppress or object on this basis when the State introduced that evidence at trial. *See Strehl v. State*, 486 S.W.3d 110, 112 (Tex. App.—Texarkana 2016, no pet.). "To preserve error, the record must show that appellant made a timely

request, objection, or motion, and that the trial court ruled on it." *Garza v. State*, 126 S.W.3d 79, 81–82 (Tex. Crim. App. 2004) (citing TEX. R. APP. P. 33.1(a)); *see* TEX. R. EVID. 103.

Clark did not request suppression of the traffic stop either in writing or orally based on a lack of probable cause for the K-9 search. Clark also did not object at trial when the State offered the body-camera footage or Nustad's testimony describing the traffic stop. *See Strehl*, 486 S.W.3d at 112. A lack of objection at trial can waive the issue if the circumstances indicate abandonment. *Thomas v. State*, 408 S.W.3d 877, 885 (Tex. Crim. App. 2013).

Clark's third point of error is overruled.

## V. Jury Charge Instruction

In his fourth issue, Clark argues that the trial court improperly included a jury instruction defining that methamphetamine is a controlled substance.

### A. Applicable Law

A trial court must submit a charge setting forth the "law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14. "Trial courts are obliged to instruct juries on 'the law applicable to the case,' which includes the statutory definitions that affect the meaning of the elements of the offense." *Ouellette v. State*, 353 S.W.3d 868, 870 (Tex. Crim. App. 2011) (quoting *Villarreal v. State*, 286 S.W.3d 321, 329 (Tex. Crim. App. 2009)). "As the instrument by which a jury is empowered to conviction, jury charges are meant to inform the jury of how to apply the applicable law to the facts of the case." *Alkayyali v. State*, 713 S.W.3d 780, 790 (Tex. Crim. App. 2025). "The [jury] charge 'must contain an accurate statement of the law and must

15

set out all the essential elements of the offense.'" *Id.* (quoting *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012)).

To convict for possession of a controlled substance, the State must prove that the defendant (1) knowingly or intentionally possessed the controlled substance and (2) knew that the substance was contraband. TEX. HEALTH & SAFETY CODE ANN. § 481.115(a) (Supp.), § 481.115(c), § 481.002(5), (38) (Supp.). "Whether methamphetamine was a controlled substance in Penalty Group 1 is a question of law, not of fact." *Plumlee v. State*, No. 02-17-00174-CR, 2018 WL 3153543, at *5 (Tex. App.—Fort Worth June 28, 2018, pet. ref'd) (mem. op., not designated for publication).

### B.     Analysis

The jury charge here states, "Methamphetamine is a controlled substance listed in Penalty Group One of the Texas Controlled Substances Act." That statement correctly reflects Section 481.102(6) of the Texas Health and Safety Code. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.102(6) (Supp.). Such a definition is part of the law applicable to this case. *See Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018) (stating that the trial court's "charge should include, at a minimum, 'all of the law applicable to the criminal offense that is set out in the indictment or information,' as well as 'general admonishments, including . . . the presumption of innocence, proof beyond a reasonable doubt, unanimity of the verdict, and so forth'") (quoting *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007))); s*ee Fields v. State*, Nos. 02-24-00066-CR & 02-24-00067-CR, 2025 WL 1085194, at *8 (Tex. App.—Fort Worth Apr. 10,

2025, no pet.) (mem. op., not designated for publication) (citing TEX. CODE CRIM. PROC. ANN. art. 36.14; TEX. HEALTH & SAFETY CODE ANN. § 481.102(6)).

Clark's fourth point of error is overruled.

## VI. Refusal of Requested Jury Instruction

In his fifth point of error, Clark argues that the trial court erred by denying his request for an Article 38.23 of the Texas Code of Criminal Procedure jury instruction. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23.

### A. Standard of Review

Denial of a requested jury instruction is reviewed de novo. *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex. Crim. App. 1994).

### B. Applicable Law

Article 38.23 states that, in any case where the evidence raises a fact issue as to whether it was obtained in violation of any provisions of the United States Constitution or laws of the State of Texas, "the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then . . . the jury shall disregard any such evidence so obtained."

*Garza*, 126 S.W.3d at 85(quoting TEX. CODE CRIM. PROC. ANN. art. 38.23). Questions of law, such as the existence of reasonable suspicion or probable cause, are generally reserved for the trial court. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

"The reasonable suspicion standard is wholly objective; the subjective intent of the officer conducting the investigation is irrelevant." *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012). "The standard requires only 'some minimal level of objective justification' for the stop." *Id.* (quoting *Foster v. State*, 326 S.W.3d 609, 614 (Tex. Crim. App. 2010)).

17

"Whether the facts known to the officer amount to reasonable suspicion is a mixed question of law and fact subject to *de novo* review." *Id.*

"Article 38.23 provides that evidence obtained in violation of the Constitution or laws of the United States or Texas may not be admitted in a criminal case." *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 38.23). "The statute also provides that a jury instruction should be submitted if a fact issue is raised about whether such a violation has occurred." *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 38.23). "The jury instruction requires the jury to disregard evidence that it finds was obtained in violation of the United States or Texas Constitution or laws." *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 38.23).

> To be entitled to an Article 38.23 jury instruction, three predicates must be met: (1) the evidence heard by the jury must raise an issue of fact, (2) the evidence on that fact must be affirmatively contested, and (3) the contested factual issue must be material to the lawfulness of the challenged conduct.

*Id.*

"To raise a disputed fact issue, there must be some affirmative evidence that contradicts the existence of that fact." *Yoda v. State*, 630 S.W.3d 470, 480 (Tex. App.—Eastland 2021, pet. ref'd). "This evidence can come 'from any source,' regardless of whether it is 'strong, weak, contradicted, unimpeached, or unbelievable.'" *Id.* (quoting *Garza*, 126 S.W.3d at 85). However, "[a] defendant's questions on cross-examination cannot, by themselves, raise a disputed fact issue," *id.* (citing *Madden v. State*, 242 S.W.3d 504, 515 (Tex. Crim. App. 2007)), though "the witnesses' answers to those questions might raise a fact issue," *id.* (citing *Madden*, 242 S.W.3d at 513). "Vague suggestions by appellant's counsel that the officers were on a fishing

18

expedition, without more, do not rise to the level of creating a fact issue." *Garza*, 126 S.W.3d at 86.

Article 38.23 requires the trial judge to instruct the jury that it must disregard evidence obtained in violation of the law if, and only if, a material disputed fact issue exists as to the circumstances of the law violation. *See Madden*, 242 S.W.3d at 509–11. "[A]n Article 38.23 instruction must be included in the jury charge only if there is a factual dispute about how the evidence was obtained." *Garza*, 126 S.W.3d at 85.

**C.     Analysis**

Clark orally requested an instruction allowing the jury to decide whether probable cause existed for the traffic stop. He requested that the following language be added to the jury charge: "I would rather there be an instruction that to find probable cause and gave [sic] the jury the ability to make a determination as to whether or not cause existed based upon my client turning off of 154 onto Spider Lily." Clark did not provide a specific and written proposed jury instruction and relied solely on argument. His argument "did not set out any specific historical fact . . . that the jury was to focus upon and then decide if [Nustad] was unreasonable . . . ." *Madden*, 242 S.W.3d at 512. Clark's oral request for a proposed jury instruction "focused only on the law." *See id.*[4] ("What appellant wanted was a jury instruction on whether the totality of

---

[4]The *Madden* court further stated,

> "Reasonable suspicion," in this context, is not the type of suspicion, hunch, or notion that the ordinary person might have. Rather, it is a legal term of art. The jury, however, is not an expert on legal terms of art or the vagaries of the Fourth Amendment. It cannot be expected to decide whether the totality of certain facts do or do not constitute "reasonable suspicion" under the law. That would require a lengthy course on Fourth Amendment law. Even many experienced lawyers and judges disagree on what constitutes "reasonable suspicion" or "probable cause" in a given

19

facts that [Nustad] listed constituted 'reasonable suspicion' under the Fourth Amendment."). "Whether or not the appellant was required to use a turn signal at this 'meeting' of the two roadways was an application-of-law-to-fact question that is properly left for the trial court's determination." *Robinson*, 377 S.W.3d at 718.

Nustad's testimony was direct and uncontradicted that Clark did not signal for the right turn onto Spider Lily Road. No witness disputed the physical characteristics of the intersection. Cross examination raised only the argument that the junction of the roadways was confusing and that signaling was not required. It is not proper to submit to the jury a dispute over "the legal significance of the character of the roadway." *Id.* at 722.

Because no evidence raised a material disputed historical fact concerning either the signaling or the physical characteristics of the roadways at issue, the trial court properly declined to submit an Article 38.23 instruction. Clark's fifth point of error is overruled.

## VII. Cumulative Error

In his sixth issue, Clark argues that the cumulative effect of the trial court's alleged errors described above caused him sufficient harm to justify the reversal of the trial court's judgment. To make a finding of cumulative harm from multiple errors, we must find that the trial court erred in the issues presented by Clark. *See Buntion v. State*, 482 S.W.3d 58, 79 (Tex. Crim. App. 2016) (finding "no cumulative harm" because the "appellant . . . failed to prove error concerning each of [his] claims separately"). Because Clark failed to prove error in any of his claims of

---

situation. It is the trial judge who decides what quality and quantum of facts are necessary to establish "reasonable suspicion." Only if one or more of those necessary facts are disputed does the judge ask the jury to decide whether the officer's belief in those facts was reasonable.

*Madden*, 242 S.W.3d at 511.

error, his claim of cumulative harm from these alleged errors must also fail. We overrule Clark's sixth point of error.

## VIII. Modification of the Judgment

Even though we have overruled Clark's points of error, we must modify the trial court's judgment. "This Court has the power to correct and modify the judgment of the trial court for accuracy when the necessary data and information are part of the record." *Anthony v. State*, 531 S.W.3d 739, 743 (Tex. App.—Texarkana 2016, no pet.) (citing TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993)). "The authority of an appellate court to reform incorrect judgments is not dependent upon the request of any party, nor does it turn on the question of whether a party has or has not objected in the trial court." *Id.* (quoting *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd) (en banc)).

We must correct the judgment to confirm (1) Clark's plea of not guilty at trial and (2) the proper felony degree. *See Anthony*, 531 S.W.3d at 743. The record clearly reflects that Clark pled not guilty before the trial began, but the trial court's judgment states that Clark pled "GUILTY." Also, the trial court's judgment states that Clark was convicted of a "1ST DEGREE FELONY." Clark was indicted and convicted under Section 481.115(a), which reads, "[A] person commits an offense if the person knowingly . . . possesses a controlled substance listed in Penalty Group 1." TEX. HEALTH & SAFETY CODE ANN. § 481.115(a). The indictment and jury charge clearly reflect that he was charged with a third-degree felony of possession of a controlled substance. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(c). The State filed a notice of enhancement, increasing the punishment range to twenty-five years to life. Clark pled true to

21

both of those allegations. However, enhancements do not increase the degree of offense. As a result, we modify the trial court's judgment to read (1) Clark pled "NOT GUILTY" at trial and (2) to reflect that Clark was convicted of a "3RD DEGREE FELONY."

## IX. Conclusion

As modified, we affirm the trial court's judgment.


Jeff Rambin
Justice

Date Submitted:     October 28, 2025
Date Decided:       February 4, 2026

Do Not Publish

22